[No. G031123. Fourth Dist., Div. Three. Oct. 1, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO RAFAEL FERRAEZ, Defendant and Appellant.

COUNSEL

Dabney B. Finch, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton and Melissa A. Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RYLAARSDAM, J.**—Defendant Antonio Rafael Ferraez was convicted of possessing for sale cocaine base (Health & Saf. Code, § 11351.5) and street terrorism (Pen. Code, § 186.22, subd. (a)). The jury also found true the allegation that the first offense was committed to benefit or assist a criminal

street gang (Pen. Code, § 186.22, subd. (b)(1)). The trial court sentenced defendant to four years for the drug offense and a concurrent term of two years for the gang offense, staying the sentence on the gang allegation.

Defendant argues there was insufficient evidence to support his conviction for street terrorism and also that his conviction for this offense should be reversed because his attorney rendered ineffective assistance of counsel. He further contends the trial court erred by failing to stay his sentence on the street terrorism count pursuant to Penal Code section 654. We disagree and therefore affirm.

## FACTS

In June 2001, Officer Gonzalez saw defendant standing by the Bristol swap mall. During prior contacts, defendant had told the officer he was a Walnut Street gang member and went by the moniker "Sniper." After the officer made eye contact with defendant, he saw defendant take something from his pocket and place it in his waistband. In a subsequent search, the officer located a clear plastic baggie in defendant's waistband; the baggie contained 26 small pieces of rock cocaine, which together weighed approximately 1.83 grams.

Defendant told Officer Gonzalez the substance was "rock" and he had planned to sell it in order to raise "some quick money" to "buy a $400 car . . .." Defendant claimed he did not use the drug and he had permission from the "Las Compadres" gang to sell it at that location. He also said he was not selling it for the gang. Defendant told the officer he had been a gang member for nine years.

Investigator Galguera, a gang expert, testified that gang members are involved in drug sales because it involves less risk than other crimes, e.g., robbery, and the profits may be used to buy guns or more drugs in order to increase the volume of their business. He further explained that possessing drugs for sale enhances a gang's reputation. In Galguera's opinion, defendant was an active member of the Walnut Street gang based on the fact he had received five STEP Act (Street Terrorism Enforcement and Prevention Act) notices, he had a tattoo identifying himself as a gang member, he had previously admitted his gang membership, and he had been on probation with gang terms.

After being presented with a set of hypothetical facts parallel to the facts of the case, Galguera opined that the drugs were intended to be sold for the benefit of or in association with the gang. He further testified the proceeds in such a situation would be used to benefit the gang through the purchase of weapons or narcotics, or as bail for a fellow gang member. He also testified that the sale of drugs promotes, furthers, and assists criminal conduct by the gang.

Defendant testified that he went to the swap mall to purchase drugs and admitted he had a drug problem and smoked "[a] gram a day." The police stopped him just after he had bought the crack for $50 but before he had the opportunity to smoke any of it. Defendant denied telling Officer Gonzalez that he intended to sell the drugs or planned to use the money from the drug sales to buy a car. He claimed he told the officer he used to be an active gang member, not that he was currently active. Defendant testified that his moniker was "Dumbo," not "Sniper." Defendant also denied that he had admitted to being an active gang member when he was contacted by different police officers in the month prior to his arrest.

In rebuttal, the prosecutor called Officer Ruiz to the stand. Ruiz testified he contacted defendant on May 5, 2001, in an area frequented by Walnut Street gang members, and defendant admitted to being a member of the gang since he was 13 years old. Defendant did not indicate he was a former gang member. The contact took place in an area of Santa Ana that had recently been claimed by the Walnut Street gang; however, defendant lived in Orange. Ruiz encountered defendant four days later in another location frequented by Walnut Street gang members. At that time, defendant indicated that he had a recent tattoo, which had been put on by a Water Gate Crip member.

Based on his experience, Ruiz further testified he was familiar with the different ways rock cocaine can be ingested and that one gram "would be far and above" the amount he usually sees when he encounters a person in possession of the drug for personal use. "That's just a lot. It's an investment at that point." Ruiz has encountered very few individuals who use a gram of rock cocaine a day. But he has not found persons even heavily addicted to the drug who buy two-gram packages. Defendant did not appear to be under the influence of any substances during Ruiz's contacts with him in May, and he told Ruiz his moniker was "Mr. Sniper" or "Sniper." Defendant testified on surrebuttal that the moniker "Sniper" had been given to him by the Walnut Street gang "when [he] was there," but now he goes by "Dumbo."

## DISCUSSION

*Sufficiency of the Evidence*

Defendant contends there is insufficient evidence that he intended to further the gang's felonious conduct by selling drugs and that his conviction for street terrorism must be reversed. We disagree.

"In assessing a sufficiency-of-evidence argument on appeal, we review the entire record in the light most favorable to the prevailing party to determine whether it shows evidence that is reasonable, credible and of solid value from

which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Wader* (1993) 5 Cal.4th 610, 640 [20 Cal.Rptr.2d 788, 854 P.2d 80].) We apply the same standard to convictions based largely on circumstantial evidence. (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745 [45 Cal.Rptr.2d 844].) Under Penal Code section 186.22, subdivision (a), "[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment . . . ." The provision "punishes active gang participation where the defendant promotes or assists felonious conduct by the gang. It is a substantive offense whose gravamen is the participation in the gang itself." (*People v. Herrera* (1999) 70 Cal.App.4th 1456, 1467 [83 Cal.Rptr.2d 307], fns. and italics omitted.) Thus, it "applies to the perpetrator of felonious gang-related criminal conduct . . . ." (*People v. Ngoun* (2001) 88 Cal.App.4th 432, 436 [105 Cal.Rptr.2d 837].)

Defendant argues "there was direct, credible evidence that [his] intent in selling dope was *not* gang-related, but rather entirely personal: to quickly get $400 with which to buy himself a car." He contends the gang expert's opinion that the intended sale was gang related was merely circumstantial evidence and based on a set of hypothetical facts that did not include defendant's statement to Officer Gonzalez that he was trying to raise money to buy a car.

We agree the expert's testimony was circumstantial evidence, but it was still evidence supporting defendant's conviction. The hypothetical facts presented to the gang expert were properly rooted in the evidence presented at trial. (See *People v. Gardeley* (1996) 14 Cal.4th 605, 618 [59 Cal.Rptr.2d 356, 927 P.2d 713].) The omission of defendant's statement to the arresting officer about his intent to use the money to buy a car did not render the expert's opinion unreliable, particularly in light of defendant's subsequent testimony denying he made such a statement.

■ It is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 506 [68 Cal.Rptr.2d 135].) While there may be instances when it is improper for an expert to express an opinion on an ultimate issue such as specific intent (see *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876]), this is not one of them. Here, the gang expert's testimony was necessary to explain to the jury how a gang's reputation can be enhanced through drug sales and how a gang may use the proceeds from such

felonious conduct. These are matters "sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . ." (Evid. Code, § 801, subd. (a).)

Undoubtedly, the expert's testimony alone would not have been sufficient to find the drug offense was gang related. But here it was coupled with other evidence from which the jury could reasonably infer the crime was gang related. Defendant planned to sell the drugs in Las Compadres gang territory. His statements to the arresting officer that he received permission from that gang to sell the drugs at the swap mall and his earlier admissions to other officers that he was a member of Walnut Street, a gang on friendly terms with Las Compadres, also constitute circumstantial evidence of his intent.

Although defendant later denied making these statements and admissions, any issues of credibility were for the jury to decide. " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citations.]' [Citation.]" (*People v. Thomas* (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101].) We do not reweigh evidence or redetermine issues of credibility. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) We therefore conclude substantial evidence existed to support defendant's conviction for street terrorism.

*Assistance of Counsel*

Defendant contends his conviction for street terrorism should be reversed because his attorney's performance was constitutionally deficient, in that he failed to object to prior crimes and gang-related evidence and did not request a limiting instruction about the jury's consideration of such evidence. Defendant further argues his attorney failed to properly cross-examine the gang expert in regard to the prosecutor's hypothetical question which omitted defendant's statement he intended to buy a car with the drug proceeds. In addition, defendant contends his attorney should have objected to the rebuttal witness's testimony and also when the prosecutor reopened the case-in-chief to ask the rebuttal witness about defendant's moniker.

Defendant asserted the same grounds in a motion for new trial. In denying the motion, the trial court concluded that the gang and prior crimes evidence was "within the scope of relevant evidence for purposes of the People proving up, [Penal Code section] 186.22, [and] that it was not inappropriate under [Evidence Code section] 352, especially when one looks at [*People v. Gardeley, supra*, 14 Cal.4th 605]." The trial court further found the facts used in the hypothetical question posed to the gang expert "were within the range

of the evidence," noting that the jurors were instructed in regard to hypothetical questions with CALJIC No. 2.82 and "could have made [their] own conclusion." The court also ruled the rebuttal evidence was not improper. Thus, the court concluded "the evidence in this case was so overwhelming that even assuming a substandard performance by defense counsel the outcome . . . on balance would not have been different." Having reviewed the record, we come to the same conclusion.

■ To demonstrate ineffective assistance of counsel, defendant must show his attorney's representation fell below an objective standard of reasonableness and that he was prejudiced as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–217 [233 Cal.Rptr. 404, 729 P.2d 839].) Where the record fails to show reasons why the attorney acted or failed to act, the claim must be rejected on appeal unless the attorney was asked for an answer and failed to give one, or unless there could be no satisfactory explanation. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003 [108 Cal.Rptr.2d 291, 25 P.3d 519].)

■ Even where an attorney's performance is found to be substandard, prejudice arises only if there is a reasonable probability of a more favorable result, i.e., " 'a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Ledesma, supra*, 43 Cal.3d at pp. 217–218.) Consequently, to prevail defendant must show that it is reasonably probable he would have obtained a more favorable result at trial absent the alleged errors.

We may question some aspects of defense counsel's performance at trial. For example, when cross-examining Galguera, the gang expert, the attorney asked him if it was his opinion that the gang's primary activities involved drugs and guns. The witness testified, "During the last few months, that has been the main activity. . . ." Defendant's attorney then asked if the witness knew whether defendant had ever "been charged with any gun crimes . . . ." Galguera testified, "Yes, he has." At that point, the prosecutor objected on the basis of relevance; the court sustained the objection and struck the witness's answer.

Defense counsel failed to take heed and subsequently asked Galguera whether he was "still of the opinion that [defendant] was involved in criminal activity and was involved in the Walnut Street gang" based on the fact that "from 1999 until [his arrest for the present offense] there [were] no documented contacts between [defendant] and the police." Galguera responded, "Yes. Let me correct you. There was one contact before that by the Orange Police Department . . . ." The following colloquy ensued:

"[Defense counsel] Okay. Was there an arrest made?

"[Galguera] Yes, there was.

"[Q] When was that?

"[A] I can't recall at this time. But I can remember it was the first of the year or the last of last year.

"[Q] In Orange?

"[A] City of Orange . . ..

"[Q] And that was associated with the Walnut Street gang?

"[A] He was arrested by himself; is this what you're asking?

[¶] . . . [¶]

"[Q] At the time [defendant] was arrested in Orange, did that arrest have anything to do with [his] participation in the Walnut Street gang?

"[A] Yes.

"[Q] What was that?

"[A] That he was holding a weapon that belonged to the gang?

"[Q] . . . [W]hat was that established by?

"[A] It was his statement."

It is evident defense counsel had been attempting to set the stage for defendant's later testimony wherein he denied being involved with the gang since his release from the California Youth Authority in 1999. We note the probation officer's report shows that six months before trial defendant pleaded guilty to carrying a concealed weapon, a misdemeanor, and had admitted he had been holding the gun for another gang member. It is difficult to conceive of a tactical reason defense counsel may have had for questioning the expert about the crime. But evidence underlying the prior offense would have been admissible to rebut defendant's testimony denying any current gang affiliation.

We find no fault with defense counsel's failure to ask the expert whether his opinion that the drugs were being sold to assist or promote the gang would have been different if, in the hypothetical set of facts, the person told the officers he intended to use the proceeds to buy a car. Defendant ultimately denied he made that statement and denied he possessed the drugs for sale. His attorney's decision not to emphasize defendant's statement clearly was a tactical decision. Likewise, references to defendant's commitment to the youth authority appear to have been part of a strategic decision by counsel to explain defendant's precommitment gang affiliation and postcommitment addiction.

■ As previously explained, the gang-related evidence was admissible to prove the charges alleged under Penal Code section 186.22. While such evidence frequently is admitted for a limited purpose, it is up to the parties to request a limiting instruction. (*People v. Dennis* (1998) 17 Cal.4th 468, 538 [71 Cal.Rptr.2d 680, 950 P.2d 1035] [court has no sua sponte duty to give limiting instruction]; see also *People v. Freeman* (1994) 8 Cal.4th 450, 495 [34 Cal.Rptr.2d 558, 882 P.2d 249] [failure to request limiting instruction on evidence of defendant's prior crimes not ineffective assistance because trial counsel "may well not have desired the court to emphasize the evidence"].) Here, a limiting instruction would have added little to the jury's understanding of the case. And the decision not to request one was a reasonable tactical choice by defense counsel to avoid directing the jury to focus on the evidence that proved the gang-related charges.

Nor did defense counsel's failure to object to the prosecution's rebuttal witness constitute deficient performance. The witness was entirely appropriate in light of defendant's testimony denying statements he made to the police about his gang membership in the month preceding his arrest for the present offenses. The prosecutor was not required to anticipate defendant's testimony and call Ruiz as a witness during his case-in-chief. Ruiz's testimony relating to the quantity of rock cocaine typically used by an addict was relevant to refute defendant's claim that he used a gram a day. Evidence of defendant's statements during the field contacts had been admitted through the gang expert and, until those statements were actually controverted, any further testimony about them would have been repetitive and cumulative.

To the extent the prosecutor was allowed to reopen and ask Ruiz about defendant's moniker, we doubt any objection would have been sustained because the evidence was relevant to rebut defendant's claim he had gone by the moniker "Dumbo", but never "Sniper". ■ The failure to object to admissible evidence does not constitute ineffective assistance of counsel when to do so would have been futile. (*People v. Diaz* (1992) 3 Cal.4th 495, 562 [11 Cal.Rptr.2d 353, 834 P.2d 1171]; *People v. Torrez* (1995) 31

Cal.App.4th 1084, 1091 [37 Cal.Rptr.2d 712].) "Moreover, the decision to object or not to object to the admission of evidence is inherently tactical, and a failure to object will seldom establish ineffective assistance. [Citation.]" (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1092 [130 Cal.Rptr.2d 717].)

In sum, although another lawyer might have used different tactics, it is not reasonably probable a more favorable verdict would have resulted in the absence of the alleged errors. Defendant's conviction for street terrorism is supported by overwhelming evidence consisting of his statements to the police and the gang expert's testimony about gang involvement in drug sales.

*Concurrent Sentence*

Defendant contends the trial court erred by failing to stay his sentence on the street terrorism conviction pursuant to Penal Code section 654 because, even though he committed two offenses, he only possessed one intent and objective when he did so. We are not persuaded.

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (Pen. Code, § 654, subd. (a).) We will uphold a trial court's finding that a defendant is subject to multiple punishment if supported by substantial evidence. (*People v. Herrera, supra,* 70 Cal.App.4th at p. 1466.)

"[Penal Code] section 186.22, subdivision (a) requires a separate intent and objective from the underlying felony committed on behalf of the gang. The perpetrator of the underlying crime may thus possess 'two independent, even if simultaneous, objectives[,]' thereby precluding application of section 654. [Citation.]" (*People v. Herrera, supra,* 70 Cal.App.4th at p. 1468, fn. omitted.) In *Herrera,* we noted that, if Penal Code section 654 were held inapplicable under this circumstance, "it would render [Penal Code] section 186.22, subdivision (a) a nullity whenever a gang member was convicted of the substantive crime committed in furtherance of the gang. '[T]he purpose of section 654 "is to insure that a defendant's punishment will be commensurate with his culpability." [Citation.]' [Citation.]" (*Ibid.*)

Here, defendant possessed the drugs with the intent to sell, and he also intended to commit that felony to promote or assist the gang. While he may have pursued both objectives simultaneously, they were nonetheless independent of each other. Consequently, the trial court was not required to stay defendant's sentence for the gang crime under Penal Code section 654. (*In re Jose P.* (2003) 106 Cal.App.4th 458, 471 [130 Cal.Rptr.2d 810].)

## DISPOSITION

The judgment is affirmed.

Sills, P. J., and Moore, J., concurred.

On October 22, 2003, the opinion was modified to read as printed above.