172 Cal.App.4th 1018 (2009)
THE PEOPLE, Plaintiff and Respondent,
v.
GARY RAY RAMIREZ, Defendant and Appellant.
No. G038125.
Court of Appeals of California, Fourth District, Division Three.
March 30, 2009.
*1023 Brent F. Romney for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

OPINION
ARONSON, J.
A jury convicted Gary Ray Ramirez of transporting heroin and methamphetamine, and possessing those drugs for sale. (Health & Saf. Code, §§ 11351, 11352, subd. (a), 11378, 11379, subd. (a).) The jury also convicted Ramirez of active gang participation (Pen. Code, § 186.22, subd. (a)) and found he committed the drug crimes for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1); all further undesignated section references are to this code). After a bifurcated bench trial in which the trial court found defendant served prison terms for two prior serious or violent felony convictions, the court struck the prison priors and the gang enhancements for sentencing purposes, imposed a third strike term of 25 years to life, and added 10 years based on the serious or violent nature of the prior felony convictions. Defendant does not challenge his sentence on appeal.
Rather, he contends the trial court erred by failing to sever the substantive gang participation charge (§ 186.22, subd. (a)) and the gang enhancements (§ 186.22, subd. (b)(1)) from the drug charges. He also challenges the sufficiency of the evidence to support his conviction on the gang participation count and the jury's true finding on the gang enhancements. We conclude the trial court properly denied defendant's severance motion based on the cross-admissibility of the gang evidence and the drug evidence. The gang *1024 evidence established defendant's motive in possessing and transporting saleable drug quantities, i.e., as a business enterprise for his gang and, in turn, the drug offenses on behalf of his gang demonstrated his active participation in the gang.
As a matter of first impression, we also conclude the substantive crime of active gang participation punished in subdivision (a) of section 186.22 of the California Street Terrorism Enforcement and Prevention Act (STEP Act) requires proof of gang-related "felonious criminal conduct" committed by the defendant.[1] Phrased differently, we reject the Attorney General's contention section 186.22(a) punishes as active gang participation felonious criminal conduct a defendant engages in for personal reasons, unrelated to any gang. Here, expert testimony showed defendant's gang closely controlled narcotics trafficking by its members, imposing a "tax" on their drug sales, which the gang enforced by violent reprisals for nonpayment. The jury could reasonably infer defendant, a longtime member at age 46, knew of and abided by this policy, and therefore his drug offenses were gang related and, indeed, committed for the financial benefit of his gang. Because substantial evidence supports defendant's gang-participation conviction and the gang enhancements, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND
On October 2, 2005, around 9:45 p.m., Santa Ana Police Department Officers Charles Flynn and Mauricio Estrada contacted defendant and his female passenger in a pickup truck in the parking lot of a motel known for narcotics sales. While asking to see defendant's driver's license, Flynn observed both defendant's and the passenger's hands moving towards their respective waistbands. Flynn ordered the pair to exit the truck and as defendant did so, five packets fell to the ground. Four of the packets contained heroin, weighing 21 grams, 1 gram, 0.8 grams, and 0.4 grams, respectively. The other packet contained one-half ounce of methamphetamine. Flynn found $122 in crumpled-up bills on the driver's seat, next to a cell phone.
The cell phone rang several times while the officers detained defendant, and Officer Estrada answered each call. One caller, "Angie," asked for "Gary" (defendant's first name), stating it was "very important that he get over here" because "the people are here for their shit" or "black" (street terms *1025 for heroin). Another caller identified herself as "Christina," asked for Gary, and stated, "[T]ell him that Tito is busted and . . . I'm hurting and I need some black. Can you please come over and bring over some black." Flynn testified 21 grams of heroin amounted to 125 doses for a casual user and that 14.5 grams of methamphetamine represented 50 or 60 doses. Flynn testified these amounts, worth anywhere from $350 to $1,100 on the street, were not consistent with personal use.
Flynn testified as an expert on gangs and illegal drug use. As part of his efforts at gang suppression, he had interviewed thousands of gang members. He explained the significance of tattoos in gang culture, which show pride in the gang and permanent affiliation. He explained that a person who was not a member of a gang would not wear the gang's tattoo because it might result in greater punishment upon a criminal conviction, and also would invite retaliation from gang members who would take violent offense. Flynn explained gangs generally occupy and defend a "turf" and strive to achieve "respect," which they believe is gained by committing crimes, with more violent crimes generally garnering more respect, or fear, from other gangs and the community. Flynn explained that respect also motivates conduct within the gang because gang members enhance their reputation and gain greater respect by committing crimes that benefit the gang financially, or which engender fear in rival gangs and the community.
Flynn had extensive experience with the Santa Nita gang, based on hundreds of interviews with Santa Nita members. The gang claimed turf within Santa Ana. It began in the 1940's as a car club known as the "Dramatics" but, by the late 1960's, the name evolved to "Santa Nita," or simply "SN." The gang's primary activities included vehicle theft, narcotics sales, and extortion. Flynn explained that the "respect" a gang earns through violence enables it to collect "taxes." Any non-SN member who wanted to sell drugs in Santa Nita territory would have to pay a "tax" to Santa Nita. The gang also took a cut of the proceeds from drug sales by its own members, and extorted "taxes" from legitimate businesses in the community, including food trucks.
Flynn testified Santa Nita used the money from drug sales and extortion to fund its operations. The taxes paid for further drug purchases, fueling expansion of its trade, and enabled the gang to buy and sell weapons for even higher profits. The gang deposited some proceeds to jail accounts of imprisoned members, enabling them to purchase commissary items or pay fines.
Flynn testified defendant, at age 46, was still a member of Santa Nita. Flynn based this conclusion on (1) defendant's 1989 arrest in Santa Nita territory; (2) more recent field contacts with the police department's gang *1026 unit; (3) the tattoos defendant continued to wear; (4) postoffense correspondence defendant received in jail from Santa Nita members, including a letter referring to the current offenses; and (5) defendant's decision to engage in narcotics trafficking, which a longtime Santa Nita member would know required payment of the dealing tax on pain of a "beating or worse." Given a hypothetical matching the facts of defendant's case, Flynn opined that a Santa Nita member holding drugs and cash in the circumstances here would be acting for the benefit of the gang, and would be actively participating in the gang.

II

DISCUSSION

A. The Trial Court Properly Denied Severance and Bifurcation

(1) Defendant contends the trial court erred by denying his pretrial motion to sever the gang participation count from the drug counts and to bifurcate the gang enhancements for a separate trial. Section 954 authorizes joinder of offenses for a single trial if they are "connected together in their commission . . .," but the trial court retains discretion to sever the counts "in the interests of justice." (§ 954.) Enhancements, by definition, are inherently connected to the underlying offense, but as our Supreme Court has recognized, the trial court's broad discretion to control the conduct of proceedings furnishes the trial court with ample authority to bifurcate an enhancement. (People v. Hernandez (2004) 33 Cal.4th 1040, 1048-1049 [16 Cal.Rptr.3d 880, 94 P.3d 1080] (Hernandez); see § 1044.) The party seeking severance or bifurcation has the burden to "clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried." (People v. Bean (1988) 46 Cal.3d 919, 938 [251 Cal.Rptr. 467, 760 P.2d 996]; accord, Hernandez, supra, at p. 1051.)
We review the trial court's severance and bifurcation decisions for abuse of discretion based on the record at the time of the ruling. (People v. Hardy (1992) 2 Cal.4th 86, 167 [5 Cal.Rptr.2d 796, 825 P.2d 781]; see Hernandez, supra, 33 Cal.4th at pp. 1048-1050.) A joinder ruling proper at the time may prove reversibly infirm later if the defendant demonstrates joinder "`actually resulted in "gross unfairness" amounting to a denial of due process.'" (People v. Mendoza (2000) 24 Cal.4th 130, 162 [99 Cal.Rptr.2d 485, 6 P.3d 150].) The same due process protection necessarily applies to bifurcation. (See Hernandez, supra, at p. 1049 [disapproving admission of evidence "so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual guilt"].)
*1027 Flynn testified as a gang expert at the hearing on defendant's severance and bifurcation motion. As he would later do for the jury at trial, Flynn explained that Santa Nita members must pay "taxes" into a gang "kitty" on their drug sales and that "[f]ailing to pay taxes can result in anything from a beating to a fatality." The gang then utilizes these proceeds to buy guns, more drugs, and to fund custodial accounts for incarcerated gang members. These funds also serve as a resource for Santa Nita, a local gang, to pay taxes owed to regional, "umbrella" gangs to assure its members' safety in and out of prison.
Flynn's testimony established the causal connection between the drug offenses and the gang count necessary for the prosecutor to obtain joinder. (See People v. Saldana (1965) 233 Cal.App.2d 24, 29 [43 Cal.Rptr. 312] ["causal connection or `transactional' relationship" required to join offenses]; accord, Ondarza v. Superior Court (1980) 106 Cal.App.3d 195, 203 [164 Cal.Rptr. 892].) Based on Flynn's testimony, the trial court could reasonably conclude the offenses here were "connected together in their commission" as required by section 954 because drug sales provided an important source of funds for defendant's gang and contributing to the gang fund preserved the perpetrator's good standing within the gang. The evidence concerning the drug offenses and the gang count was therefore cross-admissible: defendant's active gang membership supplied a motive for the drug offensesto benefit his gang and to safeguard his reputation and safety within the gangand those offenses, in turn, demonstrated his gang participation was more than nominal or passive, as required by People v. Castenada (2000) 23 Cal.4th 743, 752 [97 Cal.Rptr.2d 906, 3 P.3d 278] (Castenada).
Flynn's testimony also was relevant to the gang enhancements because it tended to show defendant's drug transactions benefitted his gang financially. Such cross-admissibility dispels any inference of prejudice from joinder. (People v. Marshall (1997) 15 Cal.4th 1, 28 [61 Cal.Rptr.2d 84, 931 P.2d 262] (Marshall).) Simply put, where evidence concerning one offense is also relevant and admissible concerning another charged offense or enhancements, there is no reason to hold separate trials. (See ibid.) So it is here.
(2) Defendant argues Evidence Code section 1101, subdivision (a), prohibits cross-admissibility of the gang evidence on the drug counts. Subdivision (a) codifies the common law prohibition against propensity evidence. It provides that "evidence of a person's character or a trait of his . . . character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his . . . conduct) is inadmissible when offered to prove his . . . conduct on a specified occasion."
Thus, a person's assertedly bad character based on membership in a gang does not prove he or she transported drugs on any particular occasion or *1028 conducted any particular sale. (See People v. Williams (1997) 16 Cal.4th 153, 193 [66 Cal.Rptr.2d 123, 940 P.2d 710] [gang membership inadmissible to show disposition to commit a specific criminal act].) But the prosecution did not seek to introduce defendant's gang affiliation for this purpose. To the contrary, the prosecutor had ample evidence to prove defendant's conduct here: Officer Flynn personally observed a large quantity of drugs fall from defendant's waistband.
(3) Accordingly, the prosecutor introduced evidence of defendant's active gang participation to establish his unlawful motive or intent to sell the narcotics found in his possession, not to prove his bad character. (See Evid. Code, § 1101, subd. (b) ["Nothing in this section prohibits the admission of evidence that a person committed a crime . . . or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."].) Where, as here, the gang participation evidence would be admissible under Evidence Code section 1101, subdivision (b), to prove intent or motive on the drug charges, the cross-admissibility of the evidence supports joinder. (See Marshall, supra, 15 Cal.4th at p. 28.) Defendant's reliance on cases where gang evidence lacked any tendency to prove a relevant fact, such as intent or motive, is therefore misplaced. (See People v. Albarran (2007) 149 Cal.App.4th 214, 230 [57 Cal.Rptr.3d 92] ["we have concluded . . . the prosecution did not prove that this gang evidence had a bearing on the issues of intent and motive"]; In re Frank S. (2006) 141 Cal.App.4th 1192, 1199 [46 Cal.Rptr.3d 839] (Frank S.) [evidence showed minor "needed the knife for protection," disclosing no gang purpose].)
(4) Defendant argues the "magnitude, quantitatively and qualitatively, of the gang evidence" (underscoring omitted) introduced at trial deprived him of due process. Defendant did not object under Evidence Code section 352 to any particular gang evidence introduced at trial. Rather, he contends severance and bifurcation were necessary at the outset because the inflammatory nature of gang evidence fosters emotional bias in the jury, outweighing the probative value of the evidence. In cases not involving gang allegations, our Supreme Court has held that "evidence of gang membership is potentially prejudicial and should not be admitted if its probative value is minimal." (Hernandez, supra, 33 Cal.4th at p. 1049.)
But gang allegations were central to this case and the gang evidence was relevant not only to the gang count and enhancements but also, as discussed, to the drug offenses. As the high court observed in Hernandez, supra, 33 Cal.4th at p. 1049, "Evidence of the defendant's gang affiliationincluding evidence of the gang's territory, membership, signs, symbols, beliefs and *1029 practices, criminal enterprises, rivalries, and the likecan help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime." Under Hernandez, the gang evidence was therefore relevant to show motive and intent for the drug offenses, specifically to aid the jury in understanding the unique sociology and psychology that may lead members to commit crimes to support the gang and enhance their own status or preserve their safety within the gang. (Ibid.) Consequently, the trial court could reasonably conclude the probative value of this evidence outweighed any potential prejudice. (Cf. Evid. Code, § 352.)
(5) Defendant complains the prosecutor did not qualify the expert's testimony as scientific evidence under People v. Kelly (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240], Frye v. United States (D.C. Cir. 1923) 293 Fed. 1013, and other authorities, but there is no such requirement. Nor does gang expert testimony constitute profile evidence. (See generally People v. Gardeley (1996) 14 Cal.4th 605, 617 [59 Cal.Rptr.2d 356, 927 P.2d 713] (Gardeley) [gang expert may testify to habits and customs of criminal street gangs beyond the common experience of most jurors]; People v. Olguin (1994) 31 Cal.App.4th 1355, 1370 [37 Cal.Rptr.2d 596] [same].) Defendant implies the expert offered opinions on defendant's "subjective knowledge and intent" as condemned in People v. Killebrew (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876], original italics (Killebrew), but the record reveals he confined himself to describing the general expectations and motivations of gang members. (See People v. Gonzalez (2006) 38 Cal.4th 932, 946, fn. 3 [44 Cal.Rptr.3d 237, 135 P.3d 649] [distinguishing Killebrew; prosecutor may elicit gang expert testimony through use of hypothetical questions].)
(6) Here, although the gang evidence no doubt damaged defendant, the Supreme Court has recognized that "`"prejudicial" is not synonymous with "damaging."'" (People v. Karis (1988) 46 Cal.3d 612, 638 [250 Cal.Rptr. 659, 758 P.2d 1189].) The trial court could reasonably conclude the prejudice that severance and bifurcation is designed to avoid "is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence." (Ibid.) In sum, because the evidence concerning the drug counts and the gang count and enhancement were mutually relevant, cross-admissible, and more probative than prejudicial, defendant's severance and bifurcation arguments are without merit.

B. Defendant's Contentions Concerning Section 186.22(a) and (b)(1)

Defendant challenges the sufficiency of the evidence to support his conviction for active gang participation under section 186.22, subdivision (a), arguing the evidence did not show his possession and transportation of drugs was gang related rather than a personal endeavor. He similarly challenges the *1030 sufficiency of the evidence to support the jury's conclusion he possessed and transported drugs "for the benefit of, at the direction of, or in association with" a criminal street gang, as required for the gang enhancements under section 186.22(b)(1). We agree the prosecution must show a defendant's "felonious criminal conduct" under section 186.22(a) is gang related, but we are not persuaded defendant is entitled to reversal. As we explain, substantial evidence supports his conviction under section 186.22(a) and the jury's true finding on the enhancements under section 186.22(b)(1).

1. Section 186.22(a) Requires Gang-related Felonious Criminal Conduct

We first address defendant's contention proof of the offense defined in section 186.22(a) requires proof of gang-related felonious criminal conduct. The statute provides: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years." (Italics added.)
(7) As explained by the Supreme Court, "The substantive offense defined in section 186.22(a) has three elements. Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element . . . . The second element is `knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person `willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.'" (People v. Lamas (2007) 42 Cal.4th 516, 523 [67 Cal.Rptr.3d 179, 169 P.3d 102].) Defendant argues the third element applies to felonious criminal conduct that is gang related, not just any felonious criminal conduct a gang member commits. We agree.
Section 186.22(a) "punishes active gang participation where the defendant promotes or assists felonious conduct by the gang. It is a substantive offense whose gravamen is the participation in the gang itself." (People v. Herrera (1999) 70 Cal.App.4th 1456, 1467 [83 Cal.Rptr.2d 307], fns. & italics omitted (Herrera).) Because the gravamen of the crime is gang participation, it follows that the offense "`applies to the perpetrator of felonious gang-related criminal conduct . . . .'" (People v. Ferraez (2003) 112 Cal.App.4th 925, 930 [5 Cal.Rptr.3d 640], italics added (Ferraez), quoting People v. Ngoun (2001) 88 Cal.App.4th 432, 436 [105 Cal.Rptr.2d 837].)
*1031 Relying on Gardeley, supra, 14 Cal.4th 605, the Attorney General asserts section 186.22(a) does not require an active gang participant to commit a gang-related offense. In Gardeley, the Supreme Court concluded the predicate offenses necessary to establish a group is a "criminal street gang" (§ 186.22(f)) within the meaning of the STEP Act need not be gang related. The Supreme Court observed the language defining the "pattern of criminal gang activity" (§ 186.22(e)) essential to proving the existence a criminal street gang reflected no such legislative intent.[2] (Gardeley, at p. 621.) In contrast, the Supreme Court observed the Legislature's choice of words in subdivision (b)(1) "made it clear" that the provision's enhancement penalty applied "only if the crime is `gang related,' that is, it must have been committed, in the words of the statute, `for the benefit of, at the direction of, or in association with' a street gang." (14 Cal.4th at p. 622.)
The Attorney General's reliance on Gardeley is misplaced. Gardeley did not hold the Legislature could require criminal conduct be gang related only by using the phrase "for the benefit of, at the direction of, or in association with" the gang. Instead, the Supreme Court simply evaluated the language before it in subdivisions (e) and (b)(1) of section 186.22. The court had no occasion to consider the distinct terms of section 186.22(a) and therefore did not determine whether "felonious criminal conduct" must be gang related. We now turn to that question.
(8) "`As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.]" (People v. Lewis (2008) 43 Cal.4th 415, 491 [75 Cal.Rptr.3d 588, 181 P.3d 947].) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (Lungren v. Deukmejian (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) "If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. [Citation.]" (People v. Gonzalez (2008) 43 Cal.4th 1118, 1126 [77 Cal.Rptr.3d 569, 184 P.3d 702].)
(9) The third element of section 186.22(a) requires proof the person or persons charged with active participation in a criminal street gang "willfully *1032 promote[d], further[ed], or assist[ed] in any felonious criminal conduct by members of that gang . . . ." The Attorney General interprets the phrase "willfully promotes, furthers, or assists in any felonious conduct by members of that gang" to mean "furthering, assisting or promoting any criminal conduct." But this construction renders the words "by members of that gang" superfluous. We must "avoid, if possible, interpretations that render a part of a statute surplusage. [Citations.]" (People v. Cole (2006) 38 Cal.4th 964, 981 [44 Cal.Rptr.3d 261, 135 P.3d 669].) Had the Legislature intended to criminalize any felony act by a gang member, it need not have included those words and could have simply said, "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct, shall be punished . . . ."
At first blush, the phrase "by members of that gang" may not be superfluous under the Attorney General's construction if it is understood to limit subdivision (a) to apply to felonies committed for any purpose, provided the offender is a gang member. But the superfluity remains because subdivision (a)'s first element already requires that the offender be a gang member; indeed, he must "actively participate[]" in the gang. (§ 186.22(a).) The seeming redundancy of subdivision (a) calling for gang membership in both its first and third elements is resolved by the statutory construction principle known as noscitur a sociis (it is known by its associates).
(10) Under that principle, "`a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant . . . .'" (People ex rel. Lungren v. Superior Court (1996) 14 Cal.4th 294, 307 [58 Cal.Rptr.2d 855, 926 P.2d 1042].) (11) Applied here, we view the Legislature's close grouping of "any felonious criminal conduct" with the requirement that the conduct be committed by gang members as restricting the meaning of "any felonious criminal conduct" to gang-related conduct. This construction avoids rendering the gang membership requirement in the third element mere surplusage or redundant to the gang membership requirement in the first element. Under this construction, by repeating the gang membership requirement, the Legislature clarified that, to fall within section 186.22(a), gang members, including the defendant, must act as members of the gang in committing the felonious criminal conduct. In other words, the language "felonious criminal conduct by members of that gang" imposes criminal liability only for conduct by gang members acting as gang members and not in some other capacity.
(12) In resolving the conflict between the Attorney General's broad construction and one requiring gang-related conduct, we conclude several additional factors support the latter interpretation. First, the purpose of the *1033 STEP Act supports the conclusion section 186.22(a)'s "felonious criminal conduct" must be gang related. Enacted as part of the STEP Act, we must read section 186.22(a) in pari materia with the act as a whole. "The phrase `in pari materia' means `"[o]f the same manner; on the same subject"' [citation], and the rule of statutory construction governing statutes in pari materia describes a process of interpretation by reference to related statutes." (People v. Honig (1996) 48 Cal.App.4th 289, 327 [55 Cal.Rptr.2d 555].)
Section 186.21 states the purpose of the STEP Act, including section 186.22(a), as follows: "It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs." (§ 186.21, italics added.) As an element of section 186.22(a), the prerequisite of "any felonious criminal conduct by members of that gang" is a trigger for the statute's application. Under the Attorney General's construction, the phrase "any felonious criminal conduct by members of that gang" in subdivision (a) proscribes even nongang-related criminal conduct. The Attorney General's interpretation runs counter to the STEP Act's focus on eradicating "criminal activity by street gangs," "criminal gang activity," and the "terror created by street gangs" (§ 186.21). Simply put, in the context of an act aimed at gang activity, we find it incongruous to conclude the crime of active gang participation occurs when the defendant commits felonious conduct unrelated to any gang.
(13) Set against the Legislature's awareness of the constitutional requirement of personal guilt articulated in Scales v. United States (1961) 367 U.S. 203 [6 L.Ed.2d 782, 81 S.Ct. 1469] (Scales), the Attorney General's position becomes untenable. Scales upheld a conviction under the federal Smith Act of 1940 for knowing membership in an organization advocating the overthrow of the United States government by force or violence. The United States Supreme Court explained that a statute criminalizing group membership does not run afoul of principles of freedom of association or due process where it includes a requirement that the defendant personally had knowledge of the group's illegal goals and entertained the specific intent to advance those goals. (Scales, supra, at pp. 228-230; see also People v. Loeun (1997) 17 Cal.4th 1, 11 [69 Cal.Rptr.2d 776, 947 P.2d 1313] [discussing Scales].) The high court therefore cited with approval the trial court's instruction telling the jury that to convict the defendant it must find he "was an `active' member of the [Communist] Party, and not merely `a nominal, passive, inactive or purely technical' member, with knowledge of the Party's illegal advocacy and a specific intent to bring about violent overthrow `as speedily as circumstances would permit.'" (Scales, at p. 220, italics added.)
*1034 As our Supreme Court has explained, "Under Scales, the due process requirement that criminal liability rest on personal guilt means simply that a person convicted for active membership in a criminal organization must entertain `guilty knowledge and intent' of the organization's criminal purposes." (Castenada, supra, 23 Cal.4th at p. 749.) In Castenada, the Supreme Court concluded the Legislature intended to set a higher bar for conviction under section 186.22(a) than Scales did for criminalizing active membership in a group devoted to illegal goals. The court noted the STEP Act's legislative history stated an express intent to "`go[] beyond the active membership test in Scales . . . by requiring active participation, rather than mere membership.'" (Castenada, at p. 750, original italics.)
Castenada concluded the Legislature achieved its objective with section 186.22(a), observing it "`goes beyond the active membership test in Scales,' which allowed the criminal conviction of anyone holding active membership in a subversive organization, without requiring that the member aid and abet any particular criminal offense committed by other members." (Castenada, supra, 23 Cal.4th at p. 749.) Thus, by requiring that an active gang participant aid and abet a particular criminal offense committed by other gang members (ibid.) or personally and directly "perpetrat[e] . . . felonious gang-related criminal conduct" (People v. Ngoun, supra, 88 Cal.App.4th at p. 436), section 186.22(a) punishes conduct rather than mere group association. (See Castenada, at pp. 749-750.)
Unlike Castenada or Ngoun, however, the Attorney General's position on the meaning of "any felonious criminal conduct by members of that gang" in subdivision (a) of section 186.22 unmoors the defendant's conduct from any relation to gang activity. The fatal consequence of this construction is that the conduct loses any probative value in establishing the defendant's "`guilty knowledge and intent' of [his] organization's criminal purposes." (Castenada, supra, 23 Cal.4th at p. 749.) Put another way, the conduct becomes irrelevant to showing the defendant's personal knowledge of his gang's illegal goals or his specific intent to advance those goals, as constitutionally required of statutes touching on group membership. (Scales, supra, 367 U.S. at pp. 228-230.) In sum, correctly understood, the Attorney General's interpretation renders the "any felonious criminal conduct" language in section 186.22(a) no more than a license to admit other crimes evidence wholly unrelated to the gravamen of subdivision (a), which is active gang participation. (Herrera, supra, 70 Cal.App.4th at p. 1467.)
We conclude the Legislature did not intend to adopt such a policy, which deviates sharply from the underlying rationale in Castenada and Scales. Castenada teaches that proof the defendant aided and abetted other gang members in the commission of felonious conduct demonstrates the defendant's fealty to the gang's illegal purposes is more than abstract "`sympathy *1035 with the alleged criminal enterprise, unaccompanied by any significant action in its support or any commitment to undertake such action.'" (Castenada, supra, 23 Cal.4th at p. 748 [quoting Scales].) And while Scales approved the criminalization of certain group membership on proof of active membership less than separate felonious criminal conduct, the Legislature, as noted, intended to set a higher threshold requiring illegal conduct (Castenada, at p. 750). Contrary to the Legislature's intent, the Attorney General's position divorces the defendant's felonious criminal conduct entirely from the pertinent question in Scales: the defendant's personal guilt specifically related to his knowledge of, and intent to achieve, his organization's illegal goals. We therefore find the Attorney General's argument unpersuasive.
Other legislative history for the STEP Act submitted by the Attorney General bolsters our conclusion the "felonious criminal conduct" specified in section 186.22(a) must be gang related.[3] The Legislative Counsel's Digest, a proper source to determine the intent of the Legislature (Shelton v. City of Westminster (1982) 138 Cal.App.3d 610, 614 [188 Cal.Rptr. 205]), expressly uses the phrase "gang-related activity" in articulating the purpose of the STEP Act. The Digest notes, "It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang-related activity and upon the organized nature of street gangs, which together are the chief source of terror created by street gangs." (Legis. Counsel's Dig., Assem. Bill No. 2013 (1987-1988 Reg. Sess.) Mar. 6, 1987, p. 5.) In our view, the change from "criminal gang-related activity" in the Digest to "criminal gang activity" in section 186.21 as enacted is a de minimis, stylistic alteration rather than a change in the reach of section 186.22(a).
Additionally, legislative committee reports consistently reflect the Legislature's focus in the STEP Act remained on curbing gang-related criminal conduct. The Senate Appropriations Committee's analysis, for example, observes "this bill establishes criminal penalties for willfully promoting or assisting in any felonious criminal conduct of a street gang . . . ." (Sen. Com. on Appropriations, Analysis of Assem. Bill No. 2013 (1987-1988 Reg. Sess.) Aug. 4, 1988, p. 1, italics added.) The Legislature's focus on gang-related activity is confirmed in other committee reports, including the following: "Under this bill, active participation in a criminal street gang, with knowledge of its [i.e., the gang's] activities and the willful promotion, assistance, or furtherance of any of the [gang's] felonious criminal activities would be an alternate felony/misdemeanor." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 2013 (1987-1988 Reg. Sess.) July 13, 1987, p. 3, italics added.) The committee reports also used gang-related activity to exemplify the felonious criminal conduct the Legislature intended to reach with the *1036 STEP Act, e.g., the gang member "driving a car with other gang members who then shoot into a home." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2013, supra, at p. 4.) In contrast, nothing in the legislative history supports the Attorney General's interpretation of section 186.22(a) as reaching a defendant's felonious criminal conduct unrelated to any gang activity.
(14) In Gardeley, the Supreme Court observed that a criminal street gang "engages through its members" in a pattern of criminal gang activity. (Gardeley, supra, 14 Cal.4th at p. 610, italics added.) A gang, as a corporate body, can only act through its individual members, but it does not follow that the actions of those individuals are always gang related. Taking the backdrop of the Smith Act in Scales for an analogy, an anarchist conceivably may blow up a bank safe to spread anarchy designed to overthrow the government, or to obtain funds to pay for a new car, or both. The same is true for felonious criminal conduct committed by a gang member: conceivably, it may not be gang related. For the reasons discussed above, we conclude that to establish as an element of the crime of active gang participation that a defendant committed "felonious criminal conduct," the prosecution must prove the conduct was gang related rather than a merely personal endeavor.

2. Substantial Evidence Supports the Judgment

Defendant challenges the sufficiency of the evidence to support the conclusion his transportation and possession of drugs for sale constituted gang-related conduct, rather than a personal endeavor. Our review is limited. Where the record presents substantial evidence on which a reasonable trier of fact could find the defendant guilty, we may not disturb the judgment. (People v. Johnson (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].) "The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] `"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"'" (People v. Kraft (2000) 23 Cal.4th 978, 1053-1054 [99 Cal.Rptr.2d 1, 5 P.3d 68].) The same principles govern our review for substantial evidence supporting an enhancement. (People v. Gamez (1991) 235 Cal.App.3d 957, 977 [286 Cal.Rptr. 894], disapproved on another point in Gardeley, supra, 14 Cal.4th at p. 624, fn. 10.)
*1037 Defendant argues his gang membership and tattoos failed to establish he committed the drug offenses on behalf of his gang. We agree. (See Frank S., supra, 141 Cal.App.4th at p. 1199 ["While evidence established the minor has an affiliation with the Nortenos, membership alone does not prove a specific intent to use the knife . . ." for a gang-related purpose, rather than personal self-defense; "expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue" held insufficient].) But the prosecution introduced other evidence defendant's crimes were gang related.
(15) "It is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation." (Ferraez, supra, 112 Cal.App.4th at p. 930.) Here, based on his interviews with Santa Nita gang members while investigating "hundreds" of crimes committed by the gang, the expert informed the jury that drug trafficking is an important source of funds for defendant's gang and that conducting these transactions would enhance the perpetrator's standing within the gang. Specifically, after stating, "Let's just stick to Santa Nita here," the prosecutor queried, "You're in the Santa Nita gang and if you're selling narcotics, where do those monies go back to?" The expert answered, "A portion of the proceeds from those [sic] drug trafficking goes back to the gang."
Defendant relies on our decision in Ferraez. There, we observed a gang expert's testimony "was necessary to explain to the jury how a gang's reputation can be enhanced through drug sales and how a gang may use the proceeds from such felonious conduct." (Ferraez, supra, 112 Cal.App.4th at pp. 930-931.) The expert testified that "gang members are involved in drug sales because it involves less risk than other crimes, e.g., robbery, and the profits may be used to buy guns or more drugs in order to increase the volume of their business. He further explained that possessing drugs for sale enhances a gang's reputation" (id. at p. 928), presumably because it increases the gang's power and prestige by garnering drug profits and expanding its influence.
We concluded, "Undoubtedly, the expert's testimony alone would not have been sufficient to find the drug offense was gang related [b]ut here it was coupled with other evidence from which the jury could reasonably infer the crime was gang related." (Ferraez, supra, 112 Cal.App.4th at p. 931, italics added.) Specifically, the "[d]efendant planned to sell the drugs in Las Compadres gang territory. His statements to the arresting officer that he received permission from that gang to sell the drugs at the swap mall and his earlier admissions to other officers that he was a member of Walnut Street, a gang on friendly terms with Las Compadres, also constitute circumstantial evidence of his intent." (Ibid.) Stated differently, based on the expert's *1038 testimony concerning gang reliance on drug profits, the jury may have inferred Los Compadres did not extend permission to the defendant gratuitously. Rather, the defendant received permission in exchange for a cut of his drug transaction to benefit Los Compadres or its ally, his own gang. At a minimum, the jury could reasonably infer the offense was gang related because, in the context of friendly terms between his gang and Los Compadres, defendant's act of obtaining permission constituted an endorsement of gang control over drug trafficking in the area.
Because defendant made no similar extrajudicial admissions to the police about obtaining permission from his gang or any other gang, he contends we are bound by our conclusion in Ferraez that the expert's testimony was insufficient by itself to show gang-related activity. But just as the defendant's admission established the necessity of obtaining the Los Compadres gang's permission in Ferraez, the expert's testimony here revealed the Santa Nita gang closely controlled drug sales by nonmembers and members alike. Nonmembers who dared to traffic without permission from Santa Nita faced being "beaten or worse" and the expert's testimony admitted no exceptions for Santa Nita members, who were required to contribute a portion of their proceeds. The evidence therefore amply established defendant needed Santa Nita's blessing to engage in drug sales.
Defendant insists that while the evidence may have shown Santa Nita extracted a fee from its members' drug sales, no evidence showed defendant intended to pay this tax. But the evidence established Santa Nita members had to "pay to play," and the jury could therefore reasonably conclude defendant's willingness to engage in drug trafficking meant he agreed to the terms of the trade established by his gang. No evidence suggested defendant transacted sales as a rogue. The jury could reasonably conclude that, at age 46 and a veteran of at least 16 years in the gang, defendant knew of and abided by Santa Nita's rules for drug sales. Simply put, given the pervasive culture of violence within the Santa Nita gang established by the expert's testimony, the jury was entitled to conclude defendant, a long-standing member of the gang, would not risk reprisal as a "tax" cheat. The issue of intent was for the jury to decide and "`"the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"'" (People v. Kraft, supra, 23 Cal.4th at pp. 1053-1054.)
(16) In sum, substantial evidence supports the jury's conclusion the drug offenses here were sufficiently gang related to support defendant's conviction for active gang participation. And because the evidence showed defendant's potential drug sales would have financially supported the Santa Nita gang, the jury also could reasonably conclude defendant committed the offenses "for *1039 the benefit of, at the direction of, or in association with" a criminal street gang, as required for the enhancement under section 186.22(b)(1).

III

DISPOSITION
The judgment is affirmed.
Sills, P. J., and Rylaarsdam, J., concurred.
NOTES
[1] For ease of reference, we sometimes hereafter refer to section 186.22, subdivision (a), as section 186.22(a), and similarly abridge section 186.22's other subdivisions.
[2] At the time Gardeley was decided, section 186.22(e) defined a "pattern of criminal gang activity" as "`the commission, attempted commission, or solicitation of two or more'" enumerated offenses occurring within a specified time period, and "`committed on separate occasions, or by two or more persons.'" (Gardeley, supra, 14 Cal.4th at pp. 620-621.) The subdivision has since been amended (see, e.g., Prop. 21, § 4, eff. Mar. 8, 2000), but the amendments have no bearing on the issue before us.
[3] We grant the Attorney General's request for judicial notice of these materials.