Filed 4/9/13  P. v. Aguilar CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B234797 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA366018) |
| v. | |
| HERSON AGUILAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Judith L. Champagne, Judge.  Affirmed.

Alan E. Spears, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Herson Aguilar appeals from the judgment of conviction following a jury trial in which he was convicted of four felonies: Possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1))[1] (count 1); carrying a loaded firearm while having a prior felony conviction (§ 12031, subd. (a)(1)) (count 2); possession for sale of Phencyclidine (PCP) (Health & Safety Code, § 11378.5) (count 3); and possession of a firearm near a school (§ 626.9, subd. (b)) (count 4). As to all counts, the jury found true the allegation that appellant committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (b)(1)(A). As to count 3, the jury also found true the allegation that appellant was personally armed with a firearm within the meaning of section 12022, subdivision (c).

The trial court sentenced appellant to a total of 19 years in state prison as follows: On count 3, the base term, the court selected the midterm of four years doubled to eight years for a second strike (§§ 1170.12, subds. (a)-(d), 667, subds. (b)–(i)); plus five years for a prior serious felony conviction (§ 667, subd. (a)(1)); plus three years for the gang enhancement (§ 186.22, subd. (b)(1)(A)); plus three years for the firearm enhancement (§ 12022, subd. (c)). The court stayed the four-year sentences on counts 1 and 2, and ordered the six-year sentence on count 4 to run concurrently. The court imposed various fees and fines and awarded total custody credit of 882 days.

On appeal, appellant requests that we conduct an independent review of the in camera hearing on his discovery motion made pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess* motion). He also contends that the evidence was insufficient to support both his conviction for possession of PCP for sale and the true finding on the gang enhancement. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

FACTS

**Background**

On December 18, 2009, at about 9:30 p.m., Los Angeles Police Department (LAPD) Officers Mario Fernandez and Robert Resurreccion were in a marked patrol car in the general vicinity of Sheridan Elementary School in Los Angeles when they received a broadcast of a nearby attempted robbery by three Hispanic men wearing dark clothing. As the officers drove out of an alley, they saw two men matching the description of the suspects. The men looked in the direction of the patrol car and started running away. Officer Fernandez activated the car's overhead lights and Officer Resurreccion yelled for the men to stop. The men continued to run. There were no other people in the area.

The officers exited the patrol car and gave chase on foot. Officer Resurreccion focused on appellant, while Officer Fernandez focused on appellant's heavyset companion. Appellant had his hands in his sweatshirt's center pocket and briefly stopped running. Officer Resurreccion saw two small, dark-colored objects fall from the pocket and land on the street near a red car. As Officer Resurreccion continued the chase, he saw appellant remove one hand from his pocket and throw a "dark metallic shiny object" that the officer believed to be a gun into an adjacent yard. At that point, appellant's companion stopped running and surrendered to Officer Fernandez. Appellant continued running and disappeared down a driveway. Officer Resurreccion called for backup assistance.

One of the responding officers retrieved a blue-steel .44 magnum revolver lying in the yard where Officer Resurreccion was shining his flashlight. The firearm held six live bullets. Another officer found under the red car a clear plastic bag with marijuana and two brown vials with black caps "consistent with PCP" and "typical of the vials" used to store PCP. A police dog found appellant hiding under a car in a parking lot.

**Gang Evidence**

LAPD Officer Sergio Salas testified as a gang expert. Appellant has admitted more than once that he belongs to the State Street Locos gang and is known as "Trigger." Appellant has numerous tattoos showing his gang allegiance, including "State Street"

3

across his stomach and "State" on his neck. The gang has around 100 documented members and is the only gang in its area. The gang's primary activities include felony vandalism, robberies, murders, gun possession and drug sales specializing in PCP. Appellant belongs to a clique of the State Street gang known as the City View Block, which is the "stronghold" for the gang's PCP sales. Officer Salas testified that during drug transactions one gang member might carry the drugs, while another might carry the gun, and another carry the money, or they might hide these items, so that one person would not be in possession of all of them if caught. Officer Salas opined that appellant's possession of PCP in an amount sufficient for sales and a loaded firearm, which can be used to protect drugs and to assault, benefitted the State Street gang by bringing in money and causing fear and intimidation in the community, which enhanced the gang's reputation.

**Narcotics Evidence**

LAPD Detective Arturo Koenig testified as a narcotics expert. He stated that Cypress Park and the area claimed by the State Street gang were notorious for PCP sales. The most common form of PCP is liquid. PCP has such a "bad odor, almost like ammonia" and "such a strong smell" that most users do not like to carry more than they can use. According to Detective Koenig the vial appellant dropped, which contained 5.6 milliliters of PCP, could infuse 11 cigarettes and would be "well over five times the amount one person can use in a day." Detective Koenig also testified that drug dealers often do not carry money on them because if they are caught, the money stays with the gang. Detective Koenig opined that appellant possessed the PCP for sale because appellant was in an area controlled by the gang known for PCP sales, he was carrying a loaded handgun which could be used for protecting his drugs and intimidating others, and he was carrying two vials, one with PCP and one empty, indicating that appellant had already sold the contents of the empty vial.

The jury also heard testimony regarding PCP-related transactions involving appellant in 2007. Around 5:00 p.m. on April 19, 2007, LAPD Detective Sergeant Gustavo Barrientos was preparing to execute a search warrant for PCP sales at a duplex

4

located on City View Street in Los Angeles, which is "ground zero" for State Street criminal activity. The detective observed appellant engage in two separate narcotics transactions. Both transactions involved individuals approaching appellant, giving appellant money which he pocketed, and appellant giving each individual an amber-colored vial. Another officer then approached the suspected buyers. From the first person, the officer recovered a wet cigarette with the "distinctive" odor of PCP, which is "almost like fuel," and a vial. The officer recovered another vial from the second person. The parties stipulated that one vial contained .49 milliliters of PCP and the other contained .70 milliliters.

## DISCUSSION

### I. *Pitchess* Motion

Prior to trial, appellant moved for discovery of the police personnel records of Officers Resurreccion and Fernandez regarding any complaints and allegations of misconduct, broadly defined as "acts of excessive force, bias, dishonesty, coercive conduct or acts constituting a violation of the statutory or constitutional rights of others." The trial court conducted an in camera hearing. After examining the officers' personnel files, the court found discoverable information and ordered the custodian of records to provide discovery to the defense.

Appellant now asks this court to independently review the sealed reporter's transcript of the in camera hearing to determine whether all relevant police personnel records were disclosed. The People have no objection. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229–1232 [defendant has a right to appellate review of the trial court's determination of whether all relevant police personnel records were disclosed in response to *Pitchess* motion].) "Trial courts are granted wide discretion when ruling on motions to discover police officer personnel records." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

We have reviewed the sealed transcript of the in camera hearing on appellant's *Pitchess* motion. We find no abuse of discretion by the trial court.

5

**II. Substantial Evidence Challenges**

### A. *Standard of Review*

When determining whether the evidence is sufficient to sustain a conviction, "our role on appeal is a limited one." (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) We review the entire record in the light most favorable to the judgment to determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.) We presume in support of the judgment the existence of every fact that a trier of fact could reasonably deduce from the evidence. (*Ibid*.) This standard applies whether direct or circumstantial evidence is involved. (*People v. Thompson* (2010) 49 Cal.4th 79, 113.) "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) Even when there is a significant amount of countervailing evidence, the testimony of a single witness can be sufficient to uphold a conviction. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.) So long as the circumstances reasonably justify the trier of fact's finding, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) Reversal is not warranted unless it appears that "'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

### B. *Possession with Intent to Sell*

The jury was instructed that to find appellant guilty of possession for sale of PCP (count 3), the People had to prove that appellant possessed a controlled substance, he knew of its presence, he knew the substance was controlled, he intended to sell the controlled substance while he possessed it, the controlled substance was PCP, and the controlled substance was in a usable amount. (CALCRIM No. 2302.)

Appellant concedes that he was in possession of PCP and that he knew of both its presence and illegal character. He also does not challenge the finding that the PCP was

in a usable amount.[2]  However, he contends there was insufficient evidence to support the jury's finding that he intended to sell the PCP.  We disagree.

The evidence showed that appellant was a member of the State Street gang, a gang notorious for selling PCP.  Appellant's attorney also conceded during closing argument that appellant was a member of the gang.  Appellant was observed in the gang's territory with two vials, one empty and one containing 5.6 milliliters of PCP.  Detective Koenig, a narcotics expert, testified that 5.6 milliliters is more than five times the amount one person could use in a day.  The jury heard that PCP has a strong, bad odor.  Detective Koenig stated that because of the drug's odor, people do not like to carry more than what they can use at one time.  The jury could easily infer that given the amount of PCP appellant possessed, he was selling the drug.  The jury also heard testimony that appellant was engaged in prior sales of PCP in 2007.  The trial court instructed the jury that it could use this evidence for the limited purpose of deciding whether appellant acted with the intent to sell PCP in this case.  (CALCRIM No. 375.)  The evidence also showed that appellant was carrying a loaded firearm, which both the narcotics and gang experts testified would be used for protecting the drugs.  Appellant fled from the police officers, and the jury was properly instructed that such conduct could indicate an awareness of guilt.  Finally, the jury was instructed with the lesser offense of simple possession, but found appellant guilty of possession with intent to sell.

Appellant points out that no money was found on him or his companion.  But both experts testified that drug dealers often do not carry money from drug sales so that if they are caught, the money stays with the gang.  Appellant also points out there was no evidence the empty vial ever contained PCP.  He therefore faults the narcotics expert's testimony that "to be with an empty vial to me is an indication the person is much more than a user, but a seller.  He has already gone through."  But there was no evidence to

---

[2]      Usable amount is defined as "a quantity that is enough to be used by someone as a controlled substance.  Useless traces or debris are not usable amounts.  On the other hand, a usable amount does not have to be enough, in either amount or strength, to affect the user."  (CALCRIM No. 2302.)

suggest the empty vial differed from the filled vial or that it differed from the vials appellant sold in 2007. Indeed, the police officer who recovered both vials described them as "consistent with PCP" and "typical of the vials" used to store PCP.

We are satisfied that substantial evidence supports the jury's finding that appellant possessed PCP for sale.

### C. Gang Enhancement

Appellant contends that there was insufficient evidence that he possessed the gun and PCP for sale so as to support the criminal street gang enhancement.

Section 186.22, subdivision (b)(1)(A), provides that "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members," shall receive additional punishment. The jury was so instructed (CALCRIM No. 1401). The enhancement therefore has two prongs—the benefit prong and the intent prong. (*People v. Villalobos* (2006) 145 Cal.App.4th 310, 322.)

With respect to the first prong, we have little trouble finding that appellant possessed the PCP for sale to benefit the gang. Regarding drug sales, the prosecution's gang expert, Officer Salas, testified: "Narcotic sales benefits the gang [in] that it raises money to build their empire, to buy more weapons. To protect their gang turf, to be in good standing within the prison system, who[m] gang members respect and have to provide for. It builds a recognition for those members that are putting in this work, depending on what they do. [¶] Their names are known. They are recognized. Depending on how violent they are, they are feared, therefore, preventing other rival gang members from coming in due to being assaulted or even being murdered. [¶] The fear and intimidation within the community prevents the community from reporting incidents of violence to the police due to fear of retaliation, therefore, allowing the gang to continue to control the areas without being detected by the police. [¶] All those reasons, putting in work, benefits the gang."

8

Officer Salas further explained that the Mexican Mafia controls all Southern California Hispanic gangs from inside prison, and that when gangs are "purchasing weapons, distributing them on the street to gang members, sell[ing] drugs, protect[ing] the narcotics, they pay taxes, and they will be in good standing if they go into state prison and be loyal to Los Angeles."

Regarding gun possession, Officer Salas testified: "Gang members use weapons to protect their gang turf from rival gang members, protect their narcotics from being taken from them. And the use of weapons, those that carry them is for those reasons only, to assault people who come into their territory, or to assault those that are there to take their drugs from them. [¶] The weapon also creates fear and intimidation in the community. The possession of the gun creates an atmosphere of fear as well as the community knows they are members from State Street with visible tattoos."

"Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal street gang' within the meaning of section 186.22(b)(1). (*People v. Albillar*, *supra,* 51 Cal.4th at p. 63.) "It is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation. [Citation.] . . . Here, the gang expert's testimony was necessary to explain to the jury how a gang's reputation can be enhanced through drug sales and how a gang may use the proceeds from such felonious conduct. These are matters 'sufficiently beyond common experience that the opinion of an expert would assist the trier of fact . . . .' (Evid. Code, § 801, subd. (a).)'" (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 930–931.)

With respect to the second prong, appellant argues there was insufficient evidence that he possessed PCP and the gun with "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Appellant's argument is based on his position that the evidence was insufficient to show that he possessed the PCP for sale, and therefore his personal use of the PCP and his possession

of a loaded gun in the absence of any evidence that he was threatened by rival gang members cannot support the gang enhancement.

But we have already concluded that substantial evidence supports the finding that appellant possessed the PCP for sale. In light of that factor and the other evidence that appellant is an admitted member of the State Street gang, which has as one of its primary activities the sales of PCP, that appellant was carrying a loaded firearm which could be used to protect the drugs, and that he was in an area known for gang-sanctioned PCP sales, the jury could infer that appellant had the specific intent to promote, further or assist criminal conduct by State Street gang members. A defendant's intentional acts combined with knowledge that those acts would assist crimes by gang members is sufficient evidence of intent for purposes of the gang enhancement. (*People v. Villalobos, supra,* 145 Cal.App.4th at p. 322.)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                 ASHMANN-GERST


We concur:


_____, P. J.
    BOREN


_____, J.
    CHAVEZ