Filed 8/15/14  P. v. Lynch CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZACKARY JEROME LYNCH,<br><br>    Defendant and Appellant. | D065266<br><br><br><br>(Super. Ct. No. FSB-1200275) |


APPEAL from a judgment of the Superior Court of San Bernardino County, William Jefferson Powell IV, Judge.  Affirmed.


Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Zackary Jerome Lynch of the crime of possession for sale of phencyclidine (PCP) (Health & Saf. Code, § 11378.5) (count 1), and found that the offense was committed for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further, or assist the criminal conduct of gang members. (Pen. Code, § 186.22, subd. (b).)[1] The jury also found Lynch guilty of active participation in a criminal street gang (count 2). (§186.22, subd. (a).)

The trial court determined that Lynch had been convicted of a prior serious or violent felony offense within the meaning of the "Three Strikes" law (§ 667, subds. (b)-(i)), and that he had five prior convictions subject to enhancement under Health and Safety Code section 11370.2, subdivision (a) and five prior prison terms subject to enhancement under section 667.5, subdivision (b). The trial court sentenced Lynch to 10 years imprisonment on count 1, and two years, stayed, on count 2, and imposed sentencing enhancements of five consecutive terms of one year, and five consecutive terms of three years, for a total term of 30 years imprisonment.

On appeal, Lynch contends his conviction for possession of PCP for sale must be reversed because the trial court erred by: (1) admitting evidence of his prior arrest for possession of PCP for sale; (2) instructing the jury that Lynch's knowledge of the presence of PCP could be inferred from his prior conviction for possession of PCP; and (3) permitting a gang expert to testify that Lynch willfully assisted and promoted a criminal street gang by committing the drug offense. Lynch asserts the evidence is

_____

1       Unless otherwise indicated, further statutory references are to the Penal Code.

2

insufficient to support the jury's finding that he was guilty of the crime of active participation in a criminal street gang (the gang crime).[2] He also contends the trial court abused its discretion when it refused at sentencing to strike a prior conviction in the interests of justice. We find no error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, San Bernardino police officers testified that on July 27, 2011, they executed a search warrant at a business known as the "Sugar Shack," which was located in an area of San Bernardino known for gang and narcotics activity. Officers had observed prostitutes frequently entering and leaving the store, and other people briefly stopping at the business. They also had observed Zackary Jerome Lynch taking out the trash and standing in front of the Sugar Shack. Police officers knew that Lynch was a member of the Bacc Street Watts Crips (BSWC).

When police officers entered the Sugar Shack, Lynch was standing by the television set. Three other persons, including Bruce Council, were at a pool table. Council was known to police as a member of the BSWC. Officers found a can of Diet Coke with a false lid in a refrigerator at the Sugar Shack. The Diet Coke can contained a vial with approximately 25 milliliters (approximately two ounces) of PCP, enough for approximately 300 doses of PCP.

---

2      See *People v. Mesa* (2012) 54 Cal.4th 191, 197 (*Mesa*) (referring to an offense under § 186.22, subd. (a) as "the gang crime").

3

Officers searched the four individuals who were at the Sugar Shack. Lynch had a cell phone, wallet and a key ring with two keys. One of Lynch's keys opened the front door of the Sugar Shack. The other was to his car. Officers did not find any contraband in Lynch's car or on his person. While at the Sugar Shack, Officer Elizabeth Contreras looked through the text messages on Lynch's cell phone.[3] She found a text message on Lynch's cell phone stating "I like you wet." "Wet" is a slang term for PCP. Another text message asked, "Are you up?" — which is a slang phrase used to ask the recipient if he or she has narcotics for sale.

Lynch told officers that he was a part owner of the Sugar Shack. He stocked the store with candy and snacks for sale. Lynch had opened the store for business that day. When officers arrived, he was turning on the television. Lynch said the other owner's name was "Black" but could not provide a full name or contact information. Lynch told officers he used to be a member of the BSWC but left the gang when he was in prison.

None of the other individuals who were present when officers executed the search warrant had a key to the Sugar Shack. Police officers could not identify any other owner or owners of the Sugar Shack, which did not have a business license.

---

[3] Lynch did not object to the introduction of cell phone evidence at trial and raises no claim on appeal as to the legality of the search and seizure of his cell phone. The appellate record is silent as to whether the search warrant for the Sugar Shack permitted the officers to search Lynch's cell phone. (*Riley v. California* (2014) ___ U.S. ___ [189 L.Ed.2d 430; 134 Sup.Ct. 2473] [absent a specific exception to the warrant requirement, a warrantless search of a person's cell phone violates the Fourth Amendment's guarantee against unreasonable search and seizure].)

Over defense objections, the trial court allowed the prosecution to present evidence of Lynch's prior arrest in January 2009 for possession of PCP for sale (2009 offense). On January 8, 2009, police officers stopped a car in an area of San Bernardino in which the BSWC were active. Immediately prior to the stop, the officers observed that a small object was thrown from the car. The officers later recovered a small vial containing PCP. The vial looked much like the vial that was found in the Diet Coke can in the refrigerator at the Sugar Shack. Bruce Council, a BWSC gang member, was driving and Lynch, also a BWSC gang member, was one of two passengers in the car. At the time, Lynch was on parole for narcotics violations. He told an officer that "he was from the Bacc Street Crips and his moniker was Snoop." Lynch was holding a styrofoam cup containing a napkin soaked in PCP. He also had a bundle of toothpicks and several hundred dollars. Lynch was arrested and charged with possession of PCP for sale, and with a gang enhancement. Lynch pled nolo contendre to a charge of possession of PCP for sale in September 2009. Lynch was sentenced to a four-year term, with eligibility for a 50 percent reduction in time for good conduct. The trial court took judicial notice of Lynch's 2009 plea.

Officer Jason Heilman, a gang expert, testified that Lynch was a current, active member of the BSWC. Heilman based his opinion on a number of factors, including: Heilman's numerous field contacts with Lynch; Lynch's admission that he had been a gang member; Lynch's large number of gang tattoos; the number of gang contacts or gang-related contacts in Lynch's cell phone; Lynch's cell phone text messages identifying himself as "Mr. Snoop from Bacc Street Crips"; Lynch's association with Bruce Council;

5

and his frequent presence at a "known hang-out area where Bacc Street gang members have been contacted, have been arrested for selling drugs." Lynch had "Mr. Snoop East Side Bacc" tattooed on his back.

Heilman testified that the BSWC was an active criminal organization. Although it had originated in Los Angeles, the BSWC was very active in narcotics sales in San Bernardino, including the area in which the Sugar Shack was located. Heilman described three predicate crimes that were committed by BSWC members: Arlandus Jones was convicted in October 2011 for selling crack cocaine; Jerry Thompson was convicted in December 2007 for selling methamphetamine; and Domiya Draper was convicted in May 2007 for transporting cocaine base.

According to Heilman, Lynch was selling PCP for the benefit of, at the direction of, and in association with a criminal street gang for the specific purpose of promoting, furthering, and assisting the criminal conduct of the gang. Although not all crimes by BSWC members were committed to benefit the gang, Lynch's crime benefitted the BSWC because it provided revenue and expanded their narcotics territory, allowing it to make more money and recruit new gang members.

Lynch testified at trial. He denied possessing PCP in July 2011, asserting he never opened the refrigerator at the Sugar Shack. When the officers entered, Lynch was running cable wire to the television. Lynch's friend Blackberry hired him to do odd jobs at the Sugar Shack. Lynch testified that he did not tell an officer that he was a part owner of the Sugar Shack. He said he was working there. He only had a key to lock up the Sugar Shack after he finished his tasks. Lynch stated that he was a member of the BSWC

from approximately 1984 to 1986. His mother had nicknamed him "Snoop" when he was a young boy. Everyone called him that. Lynch acknowledged that he went to prison in 1984 for robbery; in 2004 for possessing PCP, cocaine, and cocaine base for sale; and in 2009 for possession of PCP for sale. Lynch testified that he did not commit any of those crimes, and he never sold PCP. With respect to all the drug offenses, including the current offense, Lynch said he was just "at the wrong place at the wrong time, keeping the wrong company."

Lynch's girlfriend testified that the Sugar Shack was a fun place for people to hang out to play pool and darts. She never saw anyone selling drugs there. Another friend, Donna Peoples, testified that she had known Lynch for 20 years. Peoples was a single parent. If she had learned that Lynch was a gang member, she would not have him around her family. Peoples went to the Sugar Shack once because she heard that it had a nice pool table. She did not see any indication of drug use while she was there.

DISCUSSION

I

*ADMISSION IN EVIDENCE OF PRIOR OFFENSE*
*OF POSSESSION OF PCP FOR SALE*

A.      *Additional Procedural Background and Contentions on Appeal*

The People sought to introduce evidence of Lynch's 2009 arrest and conviction for possession of PCP for sale at trial. (Evid. Code, § 1101, subd. (b).) Lynch opposed the introduction of evidence regarding the 2009 offense on the ground that it was character evidence offered to show that he had a predisposition to commit the instant offense.

7

The trial court admitted evidence of the 2009 offense, reasoning that Lynch's conduct was consistent in the 2009 offense and the current case, and in both cases Lynch kept PCP in a small vial in a quantity sufficient for sale. The trial court ruled the probative value of the evidence on the issue of intent to sell outweighed any potential prejudice to Lynch. Further, any direct evidence of Lynch's involvement in BWSC drug sales was relevant to the charge of criminal street gang activity, and its probative value outweighed any prejudice to Lynch.

On appeal, Lynch contends the trial court abused its discretion by admitting the prior offense evidence. Specifically, Lynch argues that evidence of his 2009 arrest and conviction should have been excluded under Evidence Code section 1101, subdivision (a) because it showed only that he had a predisposition to commit the crime of possession of PCP for sale, and the two offenses lacked sufficient similarity to be probative on the issue of intent. He further argues that the trial court erred when it did not exclude evidence of the 2009 offense because he was not contesting the finding that the PCP found in the vial in the refrigerator at the Sugar Shack was in an amount sufficient for sale, and therefore the admission of the evidence to show intent to sell was more prejudicial than probative. Lynch also asserts the 2009 offense was not relevant to prove the primary criminal activities of the BSWC because there was no proof the 2009 offense was committed for a gang-related motive. Finally, he contends the admission of propensity evidence deprived him of his fundamental rights to due process, and the error was not harmless.

8

B.    *Overview of Relevant Legal Principles and Standard of Review*

" 'Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character.' " (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).) "The elements of the offense of possession of PCP or other restricted drugs for sale are physical or constructive possession with knowledge of the presence and narcotic character of the drugs . . . ." (*People v. Johnson* (1984) 158 Cal.App.3d 850, 853 (*Johnson*), citing *People v. Williams* (1971) 5 Cal.3d 211, 215, and *People v. Jenkins* (1979) 91 Cal.App.3d 579, 583.)

"Possession may be actual or constructive." (*People v. Showers* (1968) 68 Cal.2d 639, 643.) "Constructive possession 'occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.' " (*Johnson*, *supra*, 158 Cal.App.3d at p. 854.)

The elements of possession of a controlled substance with intent to sell "may be established by circumstantial evidence and any reasonable inferences drawn from such evidence." (*People v. Groom* (1964) 60 Cal.2d 694, 696-697; see *Harris*, *supra*, 83 Cal.App.4th at p. 374 [intent to sell may be established by circumstantial evidence].) Evidence that a defendant committed a prior drug-related offense may be admissible to prove the defendant's knowledge and intent with respect to a charged drug-related offense. (See, e.g., *People v. Thorton* (2000) 85 Cal.App.4th 44, 49-50 [evidence of

9

defendant's use of heroin admissible to show knowledge of its narcotic character]; *People v. Pijal* (1973) 33 Cal.App.3d 682, 691 (*Pijal*) [defendant's knowledge of the narcotic contents of the drug and his intent to sell were at issue, therefore evidence of his prior narcotics offense was clearly admissible to show his guilty knowledge, motive and intent].)

Lynch was also charged with violating section 186.22, subdivision (a), which applies to " '[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' " (*Mesa*, *supra*, 54 Cal.4th at p. 197.)

As a general rule, evidence that the defendant has committed crimes other than those for which he is on trial is inadmissible to prove bad character, predisposition to criminality, or the defendant's conduct on a specific occasion. (*People v. Avila* (2006) 38 Cal.4th 491, 586; *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).) Evidence Code section 1101, subdivision (a) prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. (*Ewoldt*, at p. 393.)

However, Evidence Code section 1101, subdivision (b) permits the trial court to admit evidence showing that the defendant "committed a crime, civil wrong, or other

act"[4] when relevant to prove a material fact at issue, such as identity, motive, or knowledge. (Evid. Code, § 1101, subd. (b); *People v. Roldan* (2005) 35 Cal.4th 646, 705 (*Roldan*), overruled on other grounds as stated in *People v. Doolin* (2009) 45 Cal.4th 390, 421, & fn. 22; *Ewoldt*, *supra*, 7 Cal.4th at p. 400 [Evid. Code, § 1101 does not prohibit the admission of evidence of misconduct when it is offered as evidence of some other fact in issue, such as motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident].)

"Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*Carter*, *supra*, 36 Cal.4th at p. 1147.) Admissibility depends on the materiality to the current offense of the fact sought to be proved, the tendency of the uncharged act to prove the material fact, and whether there is any other rule requiring exclusion of the uncharged act. (*Walker*, *supra*, 139 Cal.App.4th at p. 796, citing *Roldan*, *supra*, 35 Cal.4th at p. 705.)

"In addition to its relevance to an issue other than predisposition or propensity, to be admissible under [Evidence Code] section 1101, subdivision (b), the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely

---

4      Various terms have been used as shorthand for this phrase. (See, e.g. *Ewoldt*, *supra*, 7 Cal.4th at p. 393 (maj. opn. of George, C.J.) ["uncharged misconduct"]; *id*. at p. 404 (dis. opn. of Mosk, J.) ["other crimes evidence"]; *People v. Carter* (2005) 36 Cal.4th 1114, 1147 (*Carter*) ["uncharged crimes"]; *People v. Walker* (2006) 139 Cal.App.4th 782, 806 (*Walker*) ["uncharged acts"].) Here, we use the phrases "2009 offense" or "uncharged crime" to refer to Lynch's arrest and conviction in 2009 for possession of PCP for sale.

11

outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Walker*, *supra*, 139 Cal.App.4th at p. 796, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 371 (*Kipp*); *Ewoldt*, *supra*, 7 Cal.4th at pp. 404-405.)

A trial court's determination of the admissibility of evidence of uncharged crimes is generally reviewed for an abuse of discretion. (*Kipp*, *supra*, 18 Cal.4th at p. 369.)

C. *Analysis*

1. *The trial court did not abuse its discretion when it allowed the People to introduce evidence of the 2009 offense under Evidence Code section 1101, subdivision (b).*

The trial court found that the circumstances of Lynch's prior arrest and conviction for possession of PCP for sale were relevant to the current charges of possession of PCP for sale and active participation in criminal street gang activity, and that there was sufficient similarity between the 2009 offense and the current drug charge to support a rational inference that Lynch intended to possess PCP for sale. The trial court stated, "In both instances [Lynch] kept PCP in a small hand-held cylindrical object in a quantity sufficient to sell. Although not distinctive enough for an identity analysis, it is certainly sufficient for the jury to infer that in light of the defendant's prior event the defendant in this event had the same intent to sell as he had in the previous case." In addition, the trial court found that any direct evidence of Lynch's involvement in BWSC drug sales was relevant to the gang crime allegation. The trial court found that the probative value of the 2009 offense intent far outweighed any potential prejudice to Lynch on the substantive drug charge or the gang crime allegation.

12

We conclude that the trial court did not abuse its discretion in determining that the charged and uncharged crimes were sufficiently similar to be relevant on the issue of whether Lynch harbored the same intent — to possess PCP for the purpose of sale — as he had in 2009. (See *Kipp*, *supra*, 18 Cal.4th at p. 371.) To establish relevance on the issue of intent, the uncharged crime must be sufficiently similar to the charged offense to support a rational inference the defendant most likely harbored the same intent on each occasion. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402; *Carter*, *supra*, 36 Cal.4th at p. 1147.)

We reject as overly simplistic Lynch's argument that the two offenses are not sufficiently similar because PCP found on a napkin in a Styrofoam cup (the 2009 offense) is not the same as PCP hidden in a glass vial in a stash can of Diet Coke (the 2011 offense). Lynch ignores the fact that on both occasions, police officers recovered similar glass vials containing PCP: that one glass vial was hidden in a stash can and the other was thrown from the automobile in which Lynch was riding immediately before his arrest is not determinative. Further, in addition to the look-alike glass vials containing PCP, other similarities between the two offenses would allow the jury to draw a reasonable inference Lynch possessed PCP for the purpose of sale and that he actively participated in a criminal street gang with knowledge that the gang's members engage in or have engaged in a pattern of criminal activity. (§ 186.22, subd. (a).) In both cases, Lynch was in actual or constructive possession of a saleable quantity of PCP; Lynch was in the company of Bruce Council, a fellow member of the BSWC; and Lynch possessed PCP in the specific area of San Bernardino in which the BSWC was most active. Thus, there is

13

sufficient similarity between the two incidents to establish relevance on the issue of intent. (*Kipp*, *supra*, 18 Cal.4th at p. 371.)

Lynch also argues the trial court erred when it admitted the 2009 offense into evidence because he did not contest the narcotic character of the drug or that it was of sufficient quantity for sale. His argument is unavailing. The prosecution's burden to prove all the elements of a criminal offense beyond a reasonable doubt "is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (*Estelle v. McGuire* (1991) 502 U.S. 62, 69-70; see *People v. Thornton* (2000) 85 Cal.App.4th 44, 49 [generally, in a criminal case, the prosecution cannot be compelled to stipulate to an essential element of the offense].) When a defendant pleads not guilty, he or she places all issues in dispute, and thus the perpetrator's identity, intent and motive are all material facts. (*Roldan*, *supra*, 35 Cal.4th at pp. 705-706.)

Even if the defense had stipulated to the narcotic quality and saleable quantity of the PCP that was in the refrigerator at the Sugar Shack, which it did not, the 2009 offense would still be relevant to whether Lynch had *the intent* to possess PCP for sale. Lynch's defense was he never sold PCP, and that with respect to all the drug offenses, including the current offense, he was just "at the wrong place at the wrong time, keeping the wrong company." Because of the similarities between the uncharged and charged crimes, a jury could draw a reasonable inference that Lynch had the intent to possess PCP for sale in 2011 because he had possessed the same illegal substance in 2009 in the same type of easily-concealable vial, and he was in the company of the same gang member in the same area of San Bernardino in which the BCWC were known to traffic in narcotics. Thus, the

14

trial court did not err when it admitted the 2009 offense into evidence notwithstanding Lynch's assertion he was not contesting the nature or saleable quantity of the PCP.

We conclude that the 2009 offense, as detailed in the statement of facts, was relevant to establishing Lynch's intent to sell PCP, and to his knowledge of, and participation in, the activities of a criminal street gang. It is therefore admissible under Evidence Code section 1101, subdivision (b).

2. *The trial court correctly determined that the probative value of the prior act outweighed any undue prejudice to the defendant under Evidence Code Section 352.*

Evidence Code section 352 states in pertinent part the court may exclude evidence if its probative value is substantially outweighed by the probability its admission will create substantial danger of undue prejudice. Prejudice is inherent whenever other crimes evidence is admitted. (*Carter*, *supra*, 36 Cal.4th at p. 1150, citing *Ewoldt*, *supra*, 7 Cal.4th at p. 404.) However, *undue prejudice* exists when the evidence " 'uniquely tends to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues.' " (*People v. Robinson* (2005) 37 Cal.4th 592, 632 (*Robinson*), quoting *People v. Crittenden* (1994) 9 Cal.4th 83, 134.)

"The weighing process under [Evidence Code] section 352 depends upon the trial court's consideration of the unique facts and issues of each case, rather than upon the mechanical application of automatic rules." (*People v. Jennings* (2000) 81 Cal.App.4th 1301, 1314 (*Jennings*).) On appeal, a trial court's resolution of these issues is reviewed for abuse of discretion. (*Carter*, *supra*, 36 Cal.4th at p. 1149.) It will not be disturbed on appeal unless " 'the prejudicial effect of the evidence clearly outweighed its probative

15

value.' " (*Jennings*, at pp. 1314-1315, citing *People v. Brown* (1993) 17 Cal.App.4th 1389, 1396.)

Lynch argues that because he was not convicted of any gang-related charges in connection with the 2009 offense, the admission of that offense to show knowledge of the gang's criminal activities was highly prejudicial to him and had minimal, if any, probative value. Citing *People v. Tran* (2011) 51 Cal.4th 1040 (*Tran*), Lynch contends that because the prior offense was never proved to be gang related, it is not admissible to prove a predicate act for purposes of establishing the BSWC's primary criminal activities or Lynch's knowledge of the gang's criminal activities.

Lynch misreads *Tran*. In that case, the defendant was convicted of first degree murder, premeditated murder and active participation in a criminal street gang. (*Tran*, *supra*, 51 Cal.4th at p. 1046.) At trial, Tran objected to the admission of prior acts to show a pattern of criminal gang activity. A witness testified about a series of extortions Tran and several other gang members had made three to four years before the current offense. The prosecution provided the jury with certified copies of the court record establishing that Tran was convicted, on a plea of guilty, for extortion. (*Tran*, *supra*, at pp. 1045-1046.) Like Lynch, Tran was not convicted of an offense under section 186.22, subdivisions (a) or (b) in the prior offense. The California Supreme Court stated, "We find the admission of evidence of defendant's conviction of extortion and related activities in 1993 and 1994 to have been a proper exercise of the trial court's discretion under Evidence Code section 352. The evidence was highly probative on several issues relevant to the charge of active participation in a criminal street gang, providing direct

16

evidence of a predicate offense, that defendant actively participated in [a gang], and that defendant knew [the gang] engaged in a pattern of criminal gang activity." (*Tran*, at p. 1050.)

Similarly, here, the trial court did not abuse its discretion when it ruled that evidence of Lynch's conviction of possession of PCP for sale in 2009 was relevant to proof of a predicate offense, that he actively participated in a gang, and that he knew the gang engaged in a pattern of criminal activity. The 2009 incident occurred in an area of San Bernardino in which the BSWC were operating. The BSWC was involved in narcotics trafficking. During the 2009 incident, Lynch admitted that he was a member of the BSWC. He was accompanied by another gang member. Thus the record belies Lynch's assertion that there was no showing that the 2009 offense was gang related. In addition, there was nothing inflammatory about the testimony describing the 2009 offense. It did not involve a crime of violence and was less egregious than the current offense, which involved selling PCP from the type of establishment that would attract young people to its doors.

We conclude that the trial court acted within its discretion in ruling that the probative value of the 2009 offense to the issue of possession with intent to sell and the gang crime was not substantially outweighed by danger of undue prejudice.[5] When the

_____

[5]     In addition, the trial court gave a limiting instruction, telling the jury that evidence of the 2009 offense could not be considered to prove Lynch had a bad character or was disposed to commit crimes. (*Tran*, *supra*, 51 Cal.4th at p. 1050 [use of limiting instruction is a factor in determining whether evidence of an uncharged act should have been excluded under Evid. Code, § 352].)

17

evidence has probative value, and the potential for prejudice resulting from its admission is within tolerable limits, it is not *unduly* prejudicial and its admission is not an abuse of discretion. (*Tran*, *supra*, 51 Cal.4th at p. 1049; *Robinson*, *supra*, 37 Cal.4th at p. 632 [evidence is not unduly prejudicial merely because it strongly implicates a defendant and casts him in a bad light].)

     3.     *The admission of the 2009 offense did not violate Lynch's due process rights.*

We are not persuaded by Lynch's argument the admission in evidence of the 2009 offense violated his federal constitutional right to a fair trial. " ' 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." ' " (*People v. Holford* (2012) 203 Cal.App.4th 155, 180; accord, *People v. Falsetta* (1999) 21 Cal.4th 903, 913; *People v. Paniagua* (2012) 209 Cal.App.4th 499, 517.)

As we discussed, the court did not err when it determined that the prior offense was relevant to the issue of intent to sell PCP and provided direct evidence of Lynch's knowledge of the activities of the BSWC, a criminal street gang. (See *Jennings*, *supra*, 81 Cal.App.4th at p. 1314 [the trial court's careful weighing of prejudice against probative value protect a defendant's due process right to a fundamentally fair trial].) Further, any error in admitting the 2009 offense in evidence is harmless.[6] Lynch testified

---

6     "Under article VI, section 13 of the California Constitution, error in the admission or exclusion of evidence warrants reversal of a judgment only if an examination of 'the entire cause, including the evidence,' discloses the error produced a 'miscarriage of justice.' " (*People v. Mullens* (2004) 119 Cal.App.4th 648, 658-659 (*Mullens*), quoting

that he did not participate in any drug-related offense at any time, asserting that he merely was "at the wrong place at the wrong time, keeping the wrong company" on both occasions. Thus, the 2009 offense could have been admitted in evidence on rebuttal to show lack of mistake or inadvertence (see *Ewoldt*, *supra*, 7 Cal.4th at p. 400), and the jury could have reasonably determined that Lynch was not, in fact, an innocent bystander at the Sugar Shack, as he claimed. Thus, it is not reasonably probable the uncharged crime evidence would have been excluded and the jury would have reached a result more favorable to Lynch. (*Mullens*, *supra*, 119 Cal.App.4th at p. 659, citing *People v. Watson* (1956) 46 Cal.2 818, 836 (*Watson*).)

II

CLAIM OF INSTRUCTIONAL ERROR

Lynch contends the trial court improperly instructed the jury that it could draw a reasonable inference that Lynch knew of the presence of the PCP at the Sugar Shack in 2011 because he had possessed PCP for sale in 2009. Although couched as instructional error, Lynch does not claim the instruction, as given, constituted legal error.[7] Rather, his

_____

*People v. Breverman* (1998) 19 Cal.4th 142, 173.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*Mullens*, at p. 659, citing *Watson*, *supra*, 46 Cal.2d at p. 836.)

[7] The record does not support Lynch's premise that the trial court instructed the jury that it reasonably could infer that Lynch knew of the presence of PCP in the refrigerator because he had previously possessed PCP for sale. Before witnesses testified about the 2009 offense, the trial court gave a limiting instruction to the jury that the uncharged crime evidence was being admitted for the jury to consider whether the uncharged crime

claim focuses on whether the jury may reasonably infer from the 2009 offense that Lynch knew of the presence of the PCP in the refrigerator at the Sugar Shack. Lynch tacitly acknowledges that, if there is sufficient similarity between the uncharged and charged crimes, it is reasonable to infer that a person *knew* of the presence of an illegal substance because he had knowingly possessed the same illegal substance on an earlier occasion.[8]

The crux of Lynch's argument is there is insufficient similarity between the uncharged and charged crimes because, in 2009, he was riding in a car and was holding a styrofoam cup containing a napkin soaked in PCP,[9] whereas, in 2011, he was in

showed the element of intent to sell PCP, as alleged in the charged crime. The trial court further informed the jury that it may use, consider or discard the uncharged crime evidence. At the close of trial, in addition to giving the jury the standard instruction that it *may* consider the uncharged crime for the limited purpose of deciding whether Lynch knew of the presence of the illegal substance, the trial court instructed the jury, "*Do not consider this evidence for any other purpose except for the limited purpose of intent*." (The standard jury instruction refers to "intent" and "knowledge." (CALCRIM No. 375).)

"Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) We therefore presume the jury considered the uncharged crime only for the limited purpose of determining whether Lynch had the intent to sell PCP.

[8] Lynch correctly points out that the cases concerning the "knowledge" element under Evidence Code section 1101, subdivision (b) speak in terms of using an uncharged crime to show a defendant's knowledge of the *narcotics character* of the substance. (See, e.g., *People v. Williams* (2009) 170 Cal.App.4th 587, 607; *People v. Ellers* (1980) 108 Cal.App.3d 943, 894; *Pijal*, *supra*, 33 Cal.App.3d at p.691.) However, Lynch does not cite, and we have not located, any case that prohibits the trial court from instructing the jury that it may consider an uncharged crime to infer that the defendant knew of the presence of the illegal substance in the charged crime.

[9] In his argument, Lynch ignores the fact that police officers observed an object being thrown from the car in which Lynch was riding and discovered that the object was a small vial containing a saleable amount of PCP.

constructive possession of a vial of PCP that was hidden in a Diet Coke can in a refrigerator at a business establishment. However, in view of the evidence of the many similarities between the two offenses, this is a distinction without a difference.

Lynch was in possession, actual or constructive, of PCP on both occasions. Although Lynch was holding a styrofoam cup containing a napkin soaked in PCP in 2009, a small glass vial containing a saleable amount of PCP was recovered by police officers on both occasions. Lynch was an active member of the BSWC on both occasions. Each offense occurred in the same area of San Bernardino where the BSWC was actively involved in narcotics sales. Lynch was in the company of the same gang member on both occasions. Thus Lynch's prior conviction for possession of PCP for sale in 2009 permits the reasonable inference that Lynch possessed PCP with the intent to sell in 2011 and therefore knew that there was PCP in the refrigerator at the Sugar Shack.

We therefore conclude that the trial court did not err when it instructed the jury that it may, but was not required to, consider the 2009 offense for the limited purpose of deciding whether Lynch knew of the presence of PCP at the Sugar Shack.

III

*GANG EXPERT TESTIMONY*

A. *Contentions on Appeal and Additional Background*

Relying on *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658 (*Killebrew*), Lynch contends the trial court committed prejudicial error when it permitted gang expert Heilman to testify over defense objections that Lynch committed the underlying offense

21

of possession of PCP for sale and that in doing so, Lynch willfully assisted and promoted the BSWC in violation of section 186.22, subdivision (b).

Lynch complains the following testimony violated *Killebrew*:

> "[The Prosecution]: Officer Heilman, based on your background, your training, your experience as a police officer for the last eight-and-a-half years, do you have an opinion as to whether this crime, being the crime of possession for PCP for sale by the defendant on . . . July 27th of 2011 was committed for the benefit of, at the direction of, or in association with a criminal street gang for the specific purpose of promoting, furthering, or assisting in the criminal conduct as a member of this gang?
>
> "[The Defense]: Objection, improper expert testimony.[10]
>
> "[The Court]: Overruled. He can testify.
>
> "The Witness: Yes, I do.
>
> "[The Prosecution]: What is that opinion?
>
> "[The Defense]" Objection.
>
> "[The Court]: What is that?
>
> "[The Defense]: Renew my objection.
>
> "[The Court]: It will be renewed. It will be deemed a standing objection. [¶] . . . [¶] You can answer.
>
> "The Witness: That it was done to benefit and further the Bacc Street Watts Crips gang."

---

10    To the extent Lynch complains that the question was improper because it was not in the form of a hypothetical question, he has forfeited this issue on appeal. The record shows that Lynch did not object to the form of question. "A party may not assert theories on appeal which were not raised in the trial court." (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 222.)

"The Witness: In '96 members of its gang were arrested in Las Vegas as part of a big federal task force for narcotics trafficking. This gang has been out here in San Bernardino since the '90's and heavily active in the 2000's and beyond in selling drugs within the city, particularly that central Phoenix area. And the reason they do this is because they have a small turf in Watts. So only so many people can you sell drugs to and make money off of, only so many customers. So you branch out, come out to San Bernardino, and you take over an area and start selling drugs there. In this case Mr. Lynch is furthering that by continuing that same behavior of selling dope, making money for the gang, and expanding the gang's drug trade outside of their little turf of Watts. They also get the benefit too of coming out to the City of San Bernardino, being able to fly under the radar a little bit because they are an L.A.-based gang. They may be a little less known out here. So they come out here, they sell the drugs, they get the new clientele, make more money, helps the gang. And that's where the benefit comes from and this gang's history of doing that. Mr. Lynch is just continuing that type of behavior."

B.   *Statement of Law and Standard of Review*

" 'A witness may not express an opinion on a defendant's guilt.' "   (*People v. Vang* (2011) 52 Cal.4th 1038, 1048 (*Vang*).) Nevertheless, "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) " 'There is no hard and fast rule that the expert cannot be asked a question that coincides with the ultimate issue in the case.' " (*People v. Valdez* (1997) 58 Cal.App.4th 494, 507 (*Valdez*), quoting *People v. Wilson* (1944) 25 Cal.2d 341, 349.)

"It is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a verdict on a gang-related offense or a finding on a gang allegation." (*People v. Ferraez* (2003) 112 Cal.App.4th 925-930 (*Ferraez*).) "[I]n

23

some circumstances, expert testimony regarding the specific defendants might be proper." (*Vang*, *supra*, 52 Cal.4th at p. 1048, fn. 4; see *Valdez*, *supra*, 58 Cal.App.4th at p. 507 [gang expert testified the defendant was a member of a particular gang and that his activities were undertaken on behalf of the gang], cited with approval in *People v. Prince* (2007) 40 Cal.4th 1179, 1227.)

We review the trial court's admission of expert testimony for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197.) The trial court's exercise of discretion will not be reversed on appeal except on a showing it was made in an arbitrary, capricious or patently absurd manner, and resulted in a manifest miscarriage of justice. The appellant has the burden of establishing that the trial court abused its discretion, prejudicing the defendant. (*People v. Hill* (2011) 191 Cal.App.4th 1104, 1122.)

C.    *Analysis*

We reject Lynch's assertion the prosecutor asked Heilman to testify that Lynch committed the underlying offense of possession of PCP for sale. The record shows the prosecutor asked Heilman whether the crime of possession for PCP for sale by the defendant on July 27, 2011, was committed for the benefit of, at the direction of, or in association with a criminal street gang for the specific purpose of promoting, furthering, or assisting in the criminal conduct as a member of this gang. This question *assumes* that Lynch did, in fact, commit the drug-related crime, but the prosecutor did not ask Heilman to opine whether Lynch was guilty of possession of PCP for sale. Thus, the question posed to Heilman was not whether Lynch was guilty of the drug-related offense but whether, *assuming* Lynch had engaged in the charged crime, whether that crime was

24

committed for a gang purpose as defined in section 186.22, subdivision (b). The court did not abuse its discretion when it determined the testimony of the gang expert would be of assistance to the jury in understanding the criminal activities of the BWSC, its motivation for establishing an area in San Bernardino for drug sales, and the similarity of Lynch's alleged conduct to the gang's historical practices. (See *Valdez*, *supra*, 58 Cal.App.4th at pp. 507-509.)

This case is not similar to *Killebrew*. In that case, the gang expert's opinion was the only evidence the prosecution offered to establish the elements of the crime. As such, it was "the type of opinion that did nothing more than inform the jury how [the expert] believed the case should be decided." (*Killebrew*, *supra*, 103 Cal.App.4th at p. 658.) Here, by contrast, gang expert Heilman testified about the history and activities of the BSWC, particularly in the area in which the Sugar Shack was located. He explained how the BSWC's reputation was enhanced through drug sales and how it used the proceeds to expand its territory, recruit new members and sell more drugs. Heilman did not testify that the gang enhancement was true. Instead, he said the BWSC would benefit financially by Lynch's sale of PCP.

In view of Heilman's expertise in evaluating the history, customs, and behavior of the BWSC, we cannot say the trial court abused its discretion in finding that an expert opinion about whether Lynch acted for the benefit of the BSWC would be of assistance to the jury in evaluating the evidence and determining whether the prosecution had proved the enhancement allegation. Such an opinion was not tantamount to an opinion of guilt or, in this case, that the enhancement allegation was true, for there were other

25

elements to the allegation that had to be proved. (*Valdez*, *supra*, 58 Cal.App.4th at p. 509.) Thus, we are not persuaded the testimony of the gang expert exceeded permissible legal limits.

IV

*ACTIVE PARTICIPATION IN A CRIMINAL STREET GANG*

Lynch argues the evidence is insufficient to support his conviction for the crime of active criminal street gang participation under section 186.22, subdivision (a). Specifically, Lynch argues there is no evidence to support a finding he was actively participating in a criminal street gang and engaged in drug sales for purpose of promoting the BSWC. Lynch contends that under *Ferraez*, *supra*, 112 Cal.App.4th 925, the opinion of the prosecution's gang expert, without more, is not sufficient to sustain a finding that the charged drug offense was gang related. (*Id*. at p. 931.) Lynch argues that the gang expert's testimony was not coupled with other evidence from which the jury could reasonably infer that Lynch willfully promoted, furthered, or assisted in felonious criminal conduct by members of the BWSC in July 2011.

To prove a charge under section 186.22, subdivision (a), the prosecution must prove that the defendant: (1) actively participated in a criminal street gang; (2) knew that the gang's members engage in or have engaged in a pattern of criminal gang activity; and (3) willfully promoted, furthered, or assisted in any felonious criminal conduct by members of that gang. (*People v. Lamas* (2007) 42 Cal.4th 516, 523 (*Lamas*).) The "gravamen of the substantive offense" under section 186.22, subdivision (a) is "active participation in a criminal street gang." (*People v. Albillar* (2010) 51 Cal.4th 47, 55.)

26

"[A]ctive participation in a criminal street gang" means that the defendant's involvement with the criminal street gang "is more than nominal or passive." (*People v. Castenada* (2000) 23 Cal.4th 743, 746, 747.)

We review the appellate record for substantial evidence to support the verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) The evidence must be reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Ibid*.) "[W]e review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid*.) We do not resolve issues of credibility or evidentiary conflicts. (*Ibid*.)

*Ferraez*, on which Lynch relies, does not assist him. In that case, our colleagues in Division Three stated:

> "Undoubtedly, the expert's testimony alone would not have been sufficient to find the drug offense was gang related. But here it was coupled with other evidence from which the jury could reasonably infer the crime was gang related. Defendant planned to sell the drugs in Las Compadres gang territory. His statements to the arresting officer that he received permission from that gang to sell the drugs at the swap mall and his earlier admissions to other officers that he was a member of Walnut Street, a gang on friendly terms with Las Compadres, also constitute circumstantial evidence of his intent." (*Ferraez*, *supra*, 112 Cal.App.4th at p. 931.)

Here, the jury could reasonably infer the crime of possession of drugs for sale was gang related. The Sugar Shack was located in an area of San Bernardino that was known for narcotics activity. Police officers were aware that BSWC gang members sold narcotics in the location of the Sugar Shack. Officer Heilman testified that narcotics sales constituted a primary activity of the BSWC. Lynch possessed PCP for sale in the

27

Sugar Shack, a candy store, as a cover for drug sales. He was the only person with a key to the Sugar Shack and no other owner was ever identified. Officer Contreras testified that Lynch had text messages on his cell phone asking him in slang language whether he had any PCP for sale.

Heilman further testified that establishing a successful drug business at the Sugar Shack would benefit and promote the BWSC by increasing their drug revenue and permitting it to expand its criminal enterprise. Detective Contreras testified that the amount of PCP was sufficient for approximately 300 doses and would generate well over $1,000 in profit for the BSWC. When arrested in 2009, Lynch was in the company of Bruce Council, who was known to be a member of the BSWC; Council was also present when Lynch was arrested at the Sugar Shack for possession of PCP for sale in 2011. Lynch admitted to police officers that he had been a member of the BSWC, and there were a number of factors that indicated Lynch was still an active BSWC member, including his continued use of his gang moniker; his continued association with active BSWC members; the number of Lynch's tattoos, some of which were relatively recent, stating his gang affiliation; and the number of gang contacts in his cell phone directory.

There is substantial evidence to show that Lynch actively participated in a criminal street gang by possessing PCP for sale, and that he knew that the gang's members engage in or have engaged in a pattern of criminal gang activity, and willfully promoted, furthered, or assisted in any felonious criminal conduct by members of that gang. (*Lamas*, *supra*, 42 Cal.4th at p. 523.) The evidence supports the jury's finding that Lynch

28

was actively participating in a criminal street gang within the meaning of section 186.22, subdivision (a).

V

### *THE COURT DID NOT ABUSE ITS DISCRETION WHEN IT DENIED LYNCH'S REQUEST TO DISMISS HIS PRIOR FELONY CONVICTION ALLEGATIONS UNDER THE THREE STRIKES LAW*

Lynch contends the trial court abused its discretion under section 1385 by denying his request to dismiss a prior felony conviction allegation. He argues that other than his conviction for robbery in 1984, when he was 18 years old, all his prior offenses are "non-violent, non-serious, drug-related offenses." Lynch further argues that at the time of his arrest for possession of PCP for sale, he was unarmed, had no contraband on his person, and willingly answered police officers' questions. Lynch did not have any prior convictions for gang-related offenses. Lynch argues the sentencing enhancements, without regard to the strike prior, subjected him to an additional 20 years' imprisonment, which adequately addressed the trial court's concern that he had displayed a consistent pattern of criminal conduct. Lynch contends the error was prejudicial because it added five years to his sentence and made him ineligible for enhanced conduct credits, which may have allowed him to reduce his total term of imprisonment by approximately 30 percent. (See § 2933, subd. (b).)

Section 1385, subdivision (a) provides in relevant part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Under section 1385, subdivision (a), a trial court has the discretion to dismiss prior felony conviction

29

allegations under the Three Strikes law. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.)

In deciding whether to dismiss a prior felony conviction allegation, a trial court must consider the constitutional rights of the defendant and the interests of society. (*People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at pp. 530-531.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to . . . section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The reasons for dismissal of a prior felony conviction allegation must be set forth in the trial court's order entered in the minutes. (§ 1385, subd. (a); *People v. Williams*, *supra*, 17 Cal.4th at p. 161.) However, section 1385, subdivision (a) does *not* require a trial court to state its reasons for declining to dismiss a prior felony conviction allegation. (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 960.)

The trial court's decision whether to dismiss a prior felony conviction allegation is reviewed for abuse of discretion. (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1434.) "Where the record demonstrates that the trial court balanced the relevant facts and

reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance. (*People v. Wade* (1959) 53 Cal.2d 322, 338.)" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

The trial court said Lynch's record showed a consistent pattern of crime. Lynch continued to commit the same types of crimes whenever he was released from prison on parole. The longest period Lynch was out of custody since he was 18 years old was between February 1992 and August 1995. Lynch did not appear to the trial court to be interested in or amenable to rehabilitation. The trial court said it was aware of its discretion to strike any or all of the priors. Its decision was informed by the nature and circumstances of Lynch's crime, including the large quantity of PCP; the sophistication and planning underlying the crime; Lynch's serious history of criminal convictions; his unsatisfactory performance on probation and parole; and the strong likelihood he would reoffend if not in prison for a significant period.

The record shows that the trial court considered the nature and circumstances of Lynch's present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects. The trial court did not abuse its discretion when it denied Lynch's request to dismiss one or more of his previous serious and/or violent felonies. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.) In addition, we reject Lynch's argument that his convictions for possession of PCP for sale were not serious crimes. The circumstances of his current offense were particularly serious. The record shows that Lynch had a large quantity of PCP for sale in what was described as a "candy shop," with a pool table and television. The record permits the reasonable

31

inference this location would attract a steady clientele, including young adults and teenagers, who would then have easy access to the drug.  We conclude the trial court did not abuse its discretion under section 1385 when it did not dismiss Lynch's prior felony conviction allegation, and sentenced him accordingly.

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.